# 18-1103

In the

# United States Court of Appeals

## For the Second Circuit



LUIS HERNANDEZ,

*Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA, W. OUTLAW, UNITED STATES
DEPARTMENT OF HOMELAND SECURITY IMMIGRATION
OFFICER, #0862 and CITY OF NEW YORK,

*Defendants-Appellees,*

- and -

JOHN DOES,

*Defendant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLANT

LAW OFFICE OF JEFFREY A. ROTHMAN
*Attorneys for Plaintiff-Appellant*
315 Broad way, Suite 200
New York, New York 10007
(212) 227-2980

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………..…………………………………..……… iii

JURISDICTIONAL STATEMENT………....…………………………..…… 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW…….……….. 1

STATEMENT OF THE CASE…………..……………….……...…………….. 3

STATEMENT OF FACTS…………..………………………....….……… 4

SUMMARY OF THE ARGUMENT………..…………….…………….. 16

STANDARD OF REVIEW …………………………………..…………18

ARGUMENT…………………………………...….……………...….…..10

POINT I

THE DISTRICT COURT ERRED IN DISMISSING
PLAINTIFF'S CLAIMS BROUGHT UNDER THE
FEDERAL TORT CLAIMS ACT …....................................................20

    A.    Plaintiff's FTCA Claim for False Arrest
        and Imprisonment ...........................................................20

    B.    Plaintiff's FTCA Claim for Abuse of Process ..................30

    C.    Plaintiff's FTCA Claim for Violation of Right
        To Due Process ................................................................34

    D.    Plaintiff's FTCA Claim for Negligence ...........................37

POINT II

THE DISTRICT COURT ERRED IN DISMISSING
PLAINTIFF'S *MONELL* CLAIMS ……………………….…………40

    A.    Plaintiff's *Monell* Claim Based Upon the City's
            Official Policy Pursuant to Its Local Laws ....................40

    B.    Plaintiff's *Monell* Claim Based Upon the City's
            Failure to Properly Train its Employees.........................43

CONCLUSION………………………………………...…………………….....46

# TABLE OF AUTHORITIES

**U.S. Supreme Court Cases**

*Ashcroft* v. *Iqbal*
556 U.S. 662 (2009) ................................................................................... 19

*Bell Atl. Corp.* v. *Twombly*
550 U.S. 544 (2007) ................................................................................... 19

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*
403 U.S. 388 (1971) ..................................................................................... 3

*Monell v. Dep't of Soc. Servs.*
436 U.S. 658 (1978) ............................................................................. 15, 41

**Federal Cases**

*Amnesty Am. v. Town of West Hartford*
361 F.3d 113 (2d Cir. 2004) ...................................................................... 45

*Appolon v. United States*
2017 U.S. Dist. LEXIS 145925 (E.D.N.Y 2017). ...................................... *36*

*Blue Tree Hotels Inv. v. Starwood Hotels & Resorts*
369 F.2d 212 (2d Cir. 2004) ...................................................................... 24

*Castilla v. City of New York*
2011 U.S. Dist. LEXIS 95619 (S.D.N.Y 2011). ....................................... *45*

*Cook v. Sheldon*
41 F.3d 73 (2d Cir. 1994) .......................................................................... 30

*Galarza v. Szalczyk*
745 F.2d 1634 (3d Cir. 2014) ............................................................ *passim*

*Holmes v. City of NY*
2016 U.S. Dist. LEXIS 27945 (S.D.N.Y 2016) ........................................ *45*

*Liranzo v. United States*
690 F.3d 78 (2d Cir. 2012)........................................................................37

*Mercado v. Dallas Cnty.*
229 F.Supp.3d 501 (N.D. Tex. 2017) .......................................................29

*Miranda-Olivares v. Clackamas County*
U.S. Dist. LEXIS 50340 (D. Or. 2014). ........................................... *passim*

*Morales v. Chadbourne*
235 F. Supp. 3d 388 (D.R.I. 2017):  ................................................ *passim*

*Phelps v. City of New York*
2006 U.S. Dist. LEXIS 42926 (S.D.N.Y 2006) ......................................*31*

*Ruston* v. *Town Board for the Town of Skaneateles*
610 F.3d 55 (2d Cir. 2010) .......................................................................18

*Todd v. Exxon Corp.*
275 F.3d 191 (2d Cir. 2001) .....................................................................19

*Watson v. United States*
865 F.3d 123 (2d Cir. 2017) .....................................................................38

**New York State Cases**

*Martin v. Adler*
135 Misc. 2d 383 (Sup. Ct. 1987)........................................................ 38-39

*Ostrowski v. State*
186 Misc. 2d 890 (Ct. Cl. 2001) ...............................................................39

*People ex rel. Swenson v. Ponte*
46 Misc. 3d 273 (Sup. Ct. 2014)...............................................................12

*Sharrock v. Dell Buick-Cadillac, Inc.*
56 A.D.2d 446 (App. Div. 1977) ...............................................................35

*Sharrock v. Dell Buick-Cadillac, Inc.*
45 N.Y.2d 152 (1978) .......................................................................... 34-35

**Federal Statutes**

8 C.F.R. § 287.7(a)...........................................................................................26

28 U.S.C. § 1331 ..............................................................................................1

28 U.S.C. § 1343 ..............................................................................................1

28 U.S.C. § 1346 ..............................................................................................1

42 U.S.C. § 1983 ................................................................................2, 38, 41

**New York City Local Laws**

Local Law 62 (2011)............................................................................ *passim*

Local Law 22 (2013)............................................................................ *passim*

# JURISDICTIONAL STATEMENT

The District Court had jurisdiction over the underlying claims pursuant to

28 U.S.C. §§ 1331, 1343, and 1346. Plaintiff-Appellant (hereinafter "Plaintiff") filed

a timely Notice of Appeal on April 13, 2018 (A91[1]), following the entry of the

Clerk's Judgment on March 14, 2018 (A64), which dismissed the case pursuant to

Judge Swain's Memorandum Opinion and Order (hereinafter "Opinion") of March

13, 2018, granting Defendants-Appellees' motions to dismiss (A63-89).[2]

# STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

The issues before this Court for review are whether the District Court erred in

granting the Defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) by

holding: (1) that Plaintiff's false arrest and imprisonment claim against the United

States of America (hereinafter "USA") under the Federal Tort Claims Act

(hereinafter "FTCA") must be dismissed because it concluded that employees of the

U.S. Department of Homeland Security (hereinafter "DHS") did not confine Plaintiff

(a native-born U.S. citizen), or cause Plaintiff's confinement, through the lodging of

an immigration detainer against him, and in holding that Plaintiff's confinement was

otherwise privileged; (2) that Plaintiff's abuse of process claim under the FTCA must

---

[1] Citations to the Joint Appendix will be prefaced with an "A."

[2] One motion to dismiss was filed by the Federal Defendants (the United States of America, and Department of Homeland Security Immigration Officer W. Outlaw), and another by Defendant City of New York.

be dismissed because Plaintiff failed to plead facts sufficient to support an inference that the DHS employees had an improper purpose in lodging the immigration detainer against Plaintiff, and in holding that Plaintiff's detention was not compelled by the detainer; (3) that Plaintiff's due process claim under the FTCA must be dismissed because New York's Constitution does not authorize due process claims against private individuals for purely private conduct; (4) that Plaintiff's negligence claim under the FTCA must be dismissed because under New York law Plaintiff may not recover under general negligence principles for federal immigration officers' failure to exercise the appropriate degree of care in issuing an immigration detainer, and because it held that Plaintiff's negligence claim did not meet the FTCA's private analogue requirement, and because it held that Plaintiff had not pled with facial plausibility what duty the DHS employees owed to Plaintiff or how they breached that duty; and (5) that Plaintiff's Monell claims against the City of New York (hereinafter, "City") must be dismissed because Plaintiff had failed to plead non-conclusory allegations to support the inference of the existence of an official policy or custom causally related to the deprivation of Plaintiff's constitutional rights pursuant to 42 U.S.C. § 1983, despite Plaintiff's allegations that the City had an official policy memorialized in its Local Laws during the relevant time period requiring the New York City Department of Correction (hereinafter, "DOC") to enforce immigration detainers that represented (as did the one that was lodged against Plaintiff herein by DHS employees) that DHS had obtained an order of deportation or

removal from the USA for the individual it requested be detained, and despite Plaintiff's specific and detailed allegations concerning the City's failure to train its employees concerning various aspects of immigration detainers and detainees' liberty interests in conjunction thereto.

## STATEMENT OF THE CASE

The present appeal arises out of a set of circumstances wherein Plaintiff, a native-born U.S. citizen, was held in the custody of the City for four days solely due to an immigration detainer which was lodged against him by a Defendant employee of DHS and the City's policies and practices related thereto.

The Complaint in this action was filed on August 3, 2016 (docket entry # 1). An Amended Complaint was filed on October 17, 2016 (docket entry #20). A Second Amended Complaint (hereinafter "SAC") (A9-27) - the operative pleading - was filed on December 14, 2016.

Both sets of Defendants - the Federal Defendants, and the City - moved separately to dismiss the SAC (A42 and 45). Plaintiff appeals from the District Court's March 13, 2018 Memorandum Opinion and Order (Hon. Laura Taylor Swain) (A63-89), which granted the Defendants' motions to dismiss, and dismissed the Plaintiff's claims.[3]

---

[3] Plaintiff does not appeal the District Court's dismissal of his claims pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), or the District Court's denial of leave to amend the SAC.

Plaintiff Luis Hernandez was born on July 28, 1974 in Brooklyn, New York, and has been a U.S. citizen all of his life.[4]  On September 27, 2013, approximately 1:30 a.m., Plaintiff was arrested in Manhattan and charged with public lewdness (a B Misdemeanor).  The same day of his arrest - September 27, 2013 - a DHS "Immigration Detainer – Notice of Action" (A32) was wrongfully lodged against Plaintiff, falsely stating that Plaintiff was of Honduran nationality, that Plaintiff's middle name was Enrique, and that Plaintiff's last name was "Hernandez-Martinez." The "Immigration Detainer – Notice of Action" was issued by Defendant DHS Immigration Officer W. Outlaw.  SAC ¶¶13-16 (A11-12).

Because of the wrongfully issued detainer, Plaintiff was unable to be released from custody at his arraignment, which would have otherwise occurred.  Specifically, because of the detainer, bail was set at the nominal amount of $1.00 by the arraignment judge, which allowed Plaintiff time credit towards any eventual sentence he might have received.  This is the routine practice (issuance of $1.00 bail) in the New York City Criminal Courts where a detainer is keeping a Criminal Court defendant in custody: without the $1.00 bail the Criminal Court defendant would not be able to receive time credit for time that he or she would have to be spending in

---

[4] The Fourteenth Amendment to the U.S. Constitution states that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside."

custody anyway due to a detainer. The $1.00 bail would not have been set by the arraignment Judge had the immigration detainer not been lodged by Defendant Outlaw. The $1.00 bail was set specifically and only because of the existence of the wrongfully issued detainer. SAC ¶¶17-19 (A12).

Because of the wrongfully issued detainer, Plaintiff was also ineligible at his arraignment for a plea bargain that would otherwise have been available to him which, if accepted, would also have allowed him to be released from custody at his arraignment without any jail sentence. The transcript of Plaintiff's September 27, 2013 arraignment transcript reads as follows:

> COURT OFFICER: Docket ending 366, Luis Hernandez. This is defendant number one. Defendant number two was previously arraigned. Defendant is charged with public lewdness. In addition, this defendant has an ICE detainer. Waive the reading not the rights?
>
> MS. BLACK [Plaintiff's criminal defense attorney]: Yes.
>
> THE COURT: All right. Good evening, Mr. Hernandez. People?
>
> MS. DUNNAN [the Assistant District Attorney]: On a plea to the charge, the recommendation is three days of community service.
>
> THE COURT: You can't ask for community service. He has an ICE detainer.
>
> MS. DUNNAN: On a plea to the charge, the recommendation is five days jail.
>
> MS. BLACK: We do not have a disposition. I didn't hear the first recommendation.
>
> MS. DUNNAN: It was three days of community service.

MS. BLACK: On a plea to the charge?

MS. DUNNAN: Yes.

MS. BLACK: We don't have a disposition

THE COURT: All right. People, do you have any notices?

MS. DUNNAN: No. Given the ICE detainer, People request that $1 bail be set.

THE COURT: Counsel, would you like a motion schedule or what would you like?

MS. BLACK: Sorry, I was not aware of the ICE detainer, just so the Court is aware.

THE COURT: I understand.

MS. BLACK: Are there notices?

MS. DUNNAN : No.

MS. BLACK : So I would waive motions and I would ask for moderate bail to be set in this matter. I ask for $1 bail to be set in this matter.

THE COURT : All right. This is going over to Part A, November 20th, for trial. $1 bail over [i.e., cash / bond] $1 bail is set.

SAC ¶¶20-21 (A12-14).

Because of the issuance of the "Immigration Detainer – Notice of Action" - and solely because of the "Immigration Detainer – Notice of Action" - Plaintiff was wrongfully held in the custody of the DOC from September 27, 2013 until October 1, 2013, when he was released.  SAC ¶22 (A14).  Plaintiff was released on October 1, 2013 because Defendant Outlaw on that date sent a subsequent "Immigration

Detainer – Notice of Action," (A50) instructing the recipient law enforcement agency (DOC) to cancel the detainer that he had previously issued on September 27, 2013. This subsequent October 1, 2013 "Immigration Detainer – Notice of Action" has a stamp placed on it by DOC stating "AUTHORIZATION TO LIFT IMMIGRATION DETAINER," and it is signed by a supervisor within DOC.  SAC ¶23 (A14).

A Securing Order (A48) was issued by the Criminal Court concerning Plaintiff. On the back of the Securing Order is a notation of the $1.00 bail that was set at Plaintiff's arraignment on September 27, 2013.  The back of the Securing Order also contains, in its "REMARKS" section, the comment "+ ICE Detainer."  There is also a time-stamp indicating that the Securing Order was received by DOC on September 28, 2013 at 1:29 a.m.  SAC ¶¶24-26 (A14-15).

A stamp is also placed on the back of the Securing Order (A49) indicating that payment of the $1.00 bail was received on October 1, 2013 by an individual (whose initials are provided, and who on information and belief was on that date an employee of DOC), and that Plaintiff was discharged from custody by another individual (whose initials or signature is provided, and who on information and belief was also an employee of the DOC on that date).  Plaintiff did not pay the $1.00 bail at any point, nor did anyone Plaintiff knows pay the bail on his behalf at any point.  SAC ¶¶27-29 (A15).

In cases where bail is $1.00 and a detainer is lifted (i.e., there is no longer a detainer requiring that an inmate be held in custody), the City, through its employees,

and as per its policies, customs, and practices, must notify appropriate DOC personnel and staff, including but not limited to DOC "reverends," who thereafter must make a "donation" of said bail amount on said inmate's behalf. When such a "donation" is made to pay the bail of an inmate, the City accepts and processes that $1.00 bail payment and immediately releases the inmate. The release from custody of an inmate with $1.00 in nominal bail is automatic in circumstances - such as Plaintiff's - where there are no longer any detainers in place that had been holding the inmate in custody. No payment of the $1.00 is necessary by the inmate or anyone on the inmate's behalf (other than the required, automatic payment described above) in order for the inmate to be released. SAC ¶¶27-32 (A15-16).

Another document, called a "CRIMS APPEARANCE HISTORY," obtained from the Criminal Court Clerk's office, indicates that at Plaintiff's next court appearance following his arraignment, on November 20, 2013, no bail was set and Plaintiff was "ROR" [released on his own recognizance]. Had there not have been a detainer lodged against Plaintiff at his arraignment, he would not have received the $1.00 bail, but instead would have been released on his own recognizance (as evidenced by the fact that at his next appearance - when there was no longer any detainer - he indeed was released on his own recognizance. SAC ¶¶33-34 (A16).

While he was in the custody of DOC, Plaintiff told various staff members – including a social worker, two corrections officers, and a DOC doctor, whose

identities are unknown – that he was a U.S. Citizen, but all of the DOC staff Plaintiff

spoke to told Plaintiff that they could not help him.  SAC ¶35 (A17).

The City has a policy, custom and practice of acceding to (i.e., enforcing)

federal immigration detention requests with regard to large numbers of the inmates in

its custody at any given time.  The circumstances under which DOC would enforce

federal immigration detention requests has evolved, due to Local Laws that have been

passed by the New York City Council in 2011 (A33), 2013 (A39), and 2014.

Although it narrowed the circumstances under which DOC would enforce

immigration detention requests, under Local Law 22, which went into effect on

March 18, 2013 (A39), it would still do so with regard to a wide set of inmates who

were in its custody.  As applicable to Plaintiff, under Local Law 22, immigration

detention requests would be enforced for individuals in DOC custody as to whom an

order of deportation or removal from the United States had purportedly been obtained

(as the detainer that was lodged against Plaintiff so purported).[5]  Thus, under Local

Law 22 the DOC would accede to federal immigration detention requests with regard

to a large number of individuals who were in its custody at any given time, including,

specifically, the Plaintiff under one of its applicable mandatory enforcement

categories.  SAC ¶¶35-39 (A16-17).

---

[5] The detainer that was lodged against Plaintiff by Defendant Outlaw represented to
DOC that DHS had "[o]btained an order of deportation or removal from the United
States for this person."  (A32).

SAC ¶38 (A17) erroneously states that under Local Law 22 DOC was still required to "honor" (i.e., enforce) DHS detainers as to any inmates facing any pending criminal charges. While that was the state of affairs under Local law 62 of 2011, following the passage of Local Law 22 in February, 2013, that provision was amended and limited to encompass only certain enumerated pending crimes (public lewdness not being among them).

In the fall of 2013, however, when Plaintiff was detained pursuant to the DHS detainer, Local Law 22 still <u>required</u> that DOC enforce immigration detainers which represent - as does the detainer that Outlaw lodged against Plaintiff with DOC herein - that they have been issued because the DHS had purportedly "[o]btained an order of deportation or removal from the United States for this person." (A32). *See*, Local Law No. 62 (issued in 2011) (A33) at §9-131(b)(1) through (b)(2)(ii)(B) (A35-36)[6], which reads, in relevant part, as follows:[7]

> b. Prohibition on honoring a civil immigration detainer.
>
> > 1. The department [DOC] shall not honor a civil immigration detainer by:
> >
> > > i. holding an individual beyond the time when such individual would otherwise be released from the department's custody**,** except for such reasonable time as is

---

[6] The formatting of Local Law 62 is awkward. For example, on the second line of A35, subsection (b) is followed on the very same line by subsection (b)(1).

[7] I have rendered these sections here using traditional outline formatting and indentation, for the Court's ease of reference.

> necessary to conduct the search specified in paragraph two of this subdivision, or
>
> ii. notifying federal immigration authorities of such individual's release.
>
> 2. Paragraph one of this subdivision shall not apply[8] when: ....
>
> > ii. ... the department [DOC] has been informed by federal immigration authorities, that such individual:
> >
> > > B. is or has previously been subject to a final order of removal pursuant to 8 C.F.R. 1241.1.

Local Law No. 22 (issued in February of 2013) (A39) did not amend this provision from 2011 in any way, and it remained in effect when DOC - pursuant to its requirements - in September of 2013 honored the detainer lodged against Plaintiff by DHS Officer Outlaw.

Plaintiff also included in the SAC (¶¶ 82-85) background information concerning the City Council's investigations and findings in 2011 that led it to enact these local laws which limited the circumstances under which DOC would enforce DHS detainers[9], and the City Council's recognition that the City was not mandated by federal law to honor these detainer requests from DHS. As noted above, however,

---

[8] As paragraph one states under what circumstances DOC <u>shall not</u> honor an immigration detainer, what follows are circumstances under which DOC <u>shall</u> honor an immigration detainer.

[9] What I refer to herein as DHS detainers, or immigration detainers, are also at times referred to as ICE detainers, as they are issued by DHS' Immigration and Customs Enforcement sub-agency.

even as so limited, the local laws as in effect in 2013 still mandated that DOC enforce immigration detainers as to a wide swath of inmates who were in its custody at any time, including those - like, purportedly, the target of the detainer that was lodged against Plaintiff - as to whom DHS had obtained an order of deportation or removal.

It is not required under federal law for local law enforcement agencies to accede to federal immigration detention requests. See, e.g., *Galarza v. Szalczyk*, 745 F.3d 634 (3d Cir. 2014); see also, *Miranda-Olivares v. Clackamas County*, U.S. Dist. LEXIS 50340 (D. Or. 2014). It has, further, been held that, even where there had actually been a proper order of removal obtained with regard to a particular individual, "there is still no authority for a local correction commissioner to detain someone based upon a civil determination, as immigration removal orders are civil, not criminal, in nature…. This court holds that the federal detainer in this case does not constitute authority to hold Mr. Mendoza [the inmate in question]." *People ex rel. Swenson v. Ponte*, 46 Misc. 3d 273, 278 (Sup. Ct. 2014). SAC ¶¶40-41 (A17).

The staff of DOC had records available to it indicating that Plaintiff was born in the United States of America, and was actually aware that Plaintiff was a native-born U.S. Citizen. In the "Inmate Details" Section of DOC's "Inmate Lookup Service," which is viewable via the DOC website concerning individuals in its custody, there is a section which states each inmate's "Nativity." Indeed, in a printout from the "Inmate Lookup Service" screen concerning Plaintiff printed by

Plaintiff's Legal Aid Attorney on September 30, 2013, it states clearly "Nativity: New York." SAC ¶¶42-44 (A17-18). A copy of this document is at A62.

Among other places, a person's nativity is also, on information and belief, indicated on an arrestee's "rap sheet" that is received from the New York State Division of Criminal Justice Services during the course of an arrestee's booking, and which was available to the New York City Police Department during the course of Plaintiff's arrest, and then available to DOC during the course of Plaintiff's unlawful detention at issue herein. SAC ¶45 (A18).

Plaintiff was never provided by DOC staff with a copy of the original 9/27/13 "Immigration Detainer – Notice of Action" (A32), nor was Plaintiff provided with a copy of the 10/1/13 "Immigration Detainer – Notice of Action" (A50) that cancelled the 9/27/13 detainer, despite the box being checked on both of those documents informing the recipient law enforcement agency to "[p]rovide a copy to the subject of this detainer." On information and belief the DOC routinely does not provide copies of immigration detainers to the individuals who are they lodged against (actually, or in error), even when the detainers instruct them to do so. SAC ¶¶46-47 (A18).

On information and belief the staff of DOC did not make any inquiries - including but not limited to checking its own readily available records which stated clearly that Plaintiff had been born in New York - to seek to ascertain whether in fact the detainer was issued in error with regard to Plaintiff, and/or to seek to ascertain whether in fact Plaintiff was a United States Citizen. SAC ¶48 (A18-19).

On information and belief neither Defendant Outlaw nor other employees of the DHS, or other employees of the United States government, made any inquiries - including but not limited to checking its own or DOC's readily available records which stated clearly that Plaintiff had been born in New York - to seek to ascertain whether in fact the detainer should have been issued with regard to Plaintiff, and/or to seek to ascertain whether in fact Plaintiff was a United States Citizen. The detainer was lodged by Defendant Outlaw to keep Plaintiff in custody because of the mere possibility that he was the Luis Enrique Hernandez-Martinez of Honduran nationality whose detention was desired. Defendant Outlaw did not care - as evidenced by the lack of even the most rudimentary effort to check whether Plaintiff was in fact this individual, and despite readily available information indicating that Plaintiff was in fact a native-born citizen of the USA - whether or not the wrong person was detained pursuant to the detainer that he lodged on September 27, 2013.[10] SAC ¶¶49-51 (A19).

The public lewdness charge against Plaintiff has been dismissed in its entirety. SAC ¶52 (A19).

The conduct by the City of treating immigration detainers as mandatory for wide categories of inmates (which included Plaintiff), and of not engaging in any inquiry -

_____

[10] As noted by the District Court (A65 n. 3), a typographic error in SAC ¶51 erroneously stated December 27, 2016. The District Court was correct in noting that the detainer was lodged on September 27, 2013. See, 9/27/13 DHS Detainer – Notice of Action (A32).

even when put on explicit notice that a detainer was issued in error concerning the person in question or was otherwise invalid (for reasons including the fact that the person to be detained was a U.S. Citizen) - to see whether or not immigration detainers are erroneous or improper was consistent with an institutionalized practice, and the City has at no time taken any effective action to prevent DOC or other of its personnel from continuing to engage in this type of misconduct, and instead authorized, tolerated as institutionalized practices, and ratified such misconduct by failing to take adequate precautions in the supervision and/or training of DOC personnel. SAC ¶¶80-81 (A23-24).

Plaintiff also specifically pled, with regard to his *Monell*[11] claim concerning the City's failure to properly train its employees, that DOC staff are not trained on the procedures, practices, policies, laws, rules, and/or directives governing immigration holds; that DOC staff are not trained to check the nativity of inmates against whom immigration detainers are lodged, to see whether the inmate had been born in the United States and was thus a citizen and therefore not subject to removal from the United States under the immigration laws; that DOC staff are never trained on the procedures, practices, policies, laws, rules, and/or directives governing the effect, if any, an immigration detainer has on an inmate and an inmate's detention generally and/or on said inmate's right to be released from detention, confinement and incarceration; that the City does not ensure that DOC staff are kept informed and/or instructed on the

---

[11] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

procedures, practices, policies, laws, rules, and/or directives governing immigration

holds, and provides no training and/or instruction to its staff in those matters; and that,

further, the City does not require that the DOC staff know and/or be familiar with the

policies and/or directives of the DOC governing, *inter alia,* immigration holds.  In fact,

DOC staff, including but not limited to corrections officers, are not even provided a

copy of DOC directives.  SAC ¶¶86-90 (A25-26).


## SUMMARY OF THE ARGUMENT

The District Court violated the standards for motions to dismiss by distorting

the facts pled, and viewing the facts, and the reasonable inferences to be drawn

therefrom, in the light most favorable to the Defendants, and not in the light most

favorable to Plaintiff, on the Defendants' motions to dismiss.  The District Court also

made errors of law concerning causation and whether the facts as alleged stated

cognizable claims.

The facts pled in the SAC, taken in the light most favorable to the Plaintiff,

amply support Plaintiff's claims.  The fact that Plaintiff was born in New York, and

thus was a native born U.S. citizen, was known to DOC (it was stated clearly on the

Inmate Lookup Service screen accessible on DOC's website), and was known - or

should have been known upon even the most rudimentary inquiry - to DHS Officer

Outlaw, who wrongfully lodged an immigration detainer against Plaintiff.  The

immigration detainer, in conjunction with the City's official policy pursuant to its

Local Laws - which mandated DOC's compliance with the detainer because the detainer purported that DHS had obtained an order of deportation or removal from the USA for Plaintiff - wrongfully deprived Plaintiff of four days of his liberty.

The immigration detainer that was lodged against Plaintiff with DOC by DHS stated (among other indicia that it related to another person and not to Plaintiff) that the individual it requested be detained was of Honduran nationality. Plaintiff was held in DOC custody for four days following his arraignment solely as a result of the lodging of that detainer. The $1 bail that was set at Plaintiff's arraignment was imposed solely due to the lodged immigration detainer, so that Plaintiff could receive time credit towards any eventual sentence he might receive in his criminal case for the time he would have to spend in custody anyway due to the immigration detainer. Had there been no immigration detainer, Plaintiff would have been released on his own recognizance at his arraignment (as evidenced by the fact that he was released on his own recognizance at his next court date, following his release after the immigration detainer was lifted by DHS). Plaintiff was also, due to the immigration detainer, ineligible for a plea bargain that would otherwise have been available to him, and which would have permitted him to avoid any jail time and solely serve community service. The District Court was thus in error in holding that Plaintiff's imprisonment was not caused by the immigration detainer, but was instead caused by the $1 bail. The $1 bail was imposed solely because of the immigration detainer, and

had Plaintiff paid the $1 bail while the detainer was still active, he would not have been released from custody by DOC. It was only once the detainer was lifted by DHS that Plaintiff was able to be released.

Plaintiff has therefore properly pled claims against the USA for false arrest and imprisonment, abuse of process, violation of the right to due process, and negligence under the FTCA. Each of these causes of action are comparable to cognizable causes of action against private citizens in New York, and the District Court erred in dismissing these claims.

The District Court also erred in dismissing Plaintiff's *Monell* claims against the City. It is clear from the facts pled that DOC enforced the DHS detainer lodged against Plaintiff pursuant to a mandate that it chose to enact through its Local Laws, and that the City's official policies thus directly caused the wrongful deprivation of Plaintiff's liberty in violation of his constitutional rights. Plaintiff has also sufficiently pled his *Monell* claim concerning the City's failure to train its DOC employees, which also caused the violation of Plaintiff's constitutional rights.

## STANDARD OF REVIEW

We review a district court's grant of a motion to dismiss under Rule 12(b)(6) *de novo*." *Ruston* v. *Town Board for the Town of Skaneateles,* 610 F.3d 55, 58 (2d Cir. 2010).

"'[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.' ... 'While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* at 58-59 (citing *Ashcroft* v. *Iqbal,* 556 U.S. 662, 679 (2009), and *Bell Atl. Corp.* v. *Twombly,* 550 U.S. 544, 565-66 (2007)). On a motion to dismiss, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Todd v. Exxon Corp.,* 275 F.3d 191,198 (2d Cir. 2001).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft,* 556 U.S. at 678. While the plausibility test "asks for more than a sheer possibility that a defendant has acted unlawfully," *id. at 679,* it "does not impose a probability requirement." *Twombly,* 550 U.S. at 556. A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." *Twombly* at 555.

In considering a motion to dismiss, a court may also consider "any documents that are either incorporated into the complaint by reference or attached to the

complaint as exhibits" *Blue Tree Hotels Inv. v. Starwood Hotels & Resorts*, 369 F.3d

212, 217 (2d Cir. 2004).


## ARGUMENT

## POINT I

## THE DISTRICT COURT ERRED IN DISMISSING PLAINTIFF'S CLAIMS BROUGHT UNDER THE FEDERAL TORT CLAIMS ACT


A.    Plaintiff's FTCA Claim for False Arrest and Imprisonment

Concerning Plaintiff's FTCA claim for false arrest and imprisonment, the District

Court erred in holding (A73-74) that Plaintiff had failed to allege sufficient facts to

support an inference that Outlaw and / or other DHS officers confined him, or that his

confinement was not otherwise privileged.  Specifically, the District Court held that:

> Plaintiff only specifically alleges that the 9/27/13 Detainer "was issued
> by Defendant Outlaw," and further alleges that Plaintiff was confined by
> the DOC after a lawful arrest by the NYPD, imposition of bail by a state
> court judge, and failure by Plaintiff to pay that bail. (See SAC ¶¶ 11, 14,
> 18-22, and 54-55.)  Plaintiff fails to allege facts demonstrating the
> Homeland Security Officers' responsibility for his detention and that
> "actions and omissions" of those officers caused Plaintiff's allegedly
> wrongful detention; the SAC proffers only conclusory assertions....
> Indeed, Plaintiff s allegations do not support the inference that Plaintiff
> was confined due to "the intention of" the Federal Defendants to confine
> him. Rather, the only plausible inference to be drawn from Plaintiff's
> factual pleading is that he was confined after being arrested by the
> NYPD, following the lawful imposition of bail and his failure to tender
> the bail. Thus, there is no showing here that Plaintiff's confinement,
> even if it was attributable to the Federal Defendants in some indirect
> way because of the issuance of the 9/27/13 Detainer, was not otherwise
> privileged....  Plaintiff's contention that he would have been kept

confined even had he paid the bail is likewise conclusory and
speculative.

(citations omitted).

This rendition of the facts, and the inferences to be drawn therefrom, is highly

distorted and skewed in Defendants' favor. Plaintiff has pled that prior to his

arraignment on the public lewdness charge DHS Officer Outlaw lodged a detainer

against him that informed DOC that DHS had "obtained an order of deportation or

removal from the United States" for him, and that the City had an official policy

pursuant to its Local Laws requiring DOC to honor detainers that made this

representation.[12]  The detainer "REQUESTED THAT YOU [DOC]: Maintain in

---

[12] The District Court also made a critical error in its earlier recitation of the facts pled in
the SAC when it stated at A65 n. 1 that "[a]s Defendants point out in their motion
papers, the Local Laws in effect at the relevant time did not require the detention of
persons on whom ICE detainers had been lodged."  This statement is entirely incorrect,
and in the pages of the City's February 20, 2017 Memorandum of Law cited by the
District Court in its footnote the City in fact concedes that, pursuant to its Local Laws in
effect on September 27, 2013, the City had a policy of honoring DHS detainers that
represented that that the person against whom the detainer was lodged is or has
previously been subject to a final order of removal from the USA.  The City stated in its
brief below as follows:

> Insofar as pertinent to plaintiff's claims, effective September 17, 2013 [sic – the
> detainer was lodged on September 27, 2013], under the City's Administrative
> Code, the DOC honored detainers, such as plaintiff's, where there was an order
> of removal or deportation and in other circumstances not relevant to plaintiff s
> situation.  Thus, plaintiff's reliance in paragraph 40 of his second amended
> complaint on *Galarza* and *Miranda-Olivares*, which hold that local law
> enforcement agencies are not required to accede to federal immigration detention
> requests, is consistent with the City's policy and practice of honoring detainers
> that meet the criteria set out in local laws, not all detainers.

custody of the subject for a period NOT TO EXCEED 48 HOURS, excluding

Saturdays, Sundays, and holidays beyond the time when the subject would have

otherwise been released from your custody[13] to allow DHS to take custody of the

subject." (A32). Defendant Outlaw thus plainly intended that Plaintiff be confined by

DOC (that is precisely what he requested through the detainer under a Local Law

regime that required DOC to accede to requests that represented precisely what he

represented concerning the existence of an order of removal), and he plainly was the

direct cause of that confinement.

Concerning the $1 bail that was set at his arraignment, Plaintiff has pled in an

entirely non-conclusory fashion that had the detainer not been lodged by Defendant

Outlaw he would have been released on his own recognizance, as evidenced by the fact

that at his next court date, following his release after the cancellation of the detainer, he

indeed was released on his own recognizance).[14] Plaintiff has also pled - and which is

---

City's February 20, 2017 Memorandum of Law (docket # 44) at 13 (emphasis added).
As discussed *supra* at pages 15-17, Local Law 22 of 2013 did not amend in any way the
provision of Local Law 62 of 2011 that required DOC to honor immigration detainers
lodged by DHS that represented - as did the detainer lodged against Plaintiff - that the
person against whom the detainer was lodged is or has previously been subject to a final
order of removal from the USA.

[13] September 27, 2013 was a Friday. Excluding the Saturday and Sunday that
followed, 48 hours later was Tuesday, October 1, 2013, when the detainer was lifted
and Plaintiff was released.

[14] It is also noteworthy that the District Court, in denying the Federal Defendants'
motion to dismiss on standing grounds, held that:

clear from the transcript from his arraignment - that the $1 in nominal bail was imposed

solely due to the detainer, at the request of both the prosecutor[15] and his own attorney,

and pursuant to the routine practice of the New York City criminal courts in

circumstances where a defendant cannot be released due to a detainer, solely so that he

---

Regardless of whether Plaintiff would have been detained had he tendered the $1.00 bail imposed by the state court, Plaintiff has alleged that, due to the "wrongfully issued [9/27/13] [D]etainer," he "was unable to be released from custody at his arraignment," though he "would have otherwise been released on his own recognizance" and, critically, that he would have been eligible for a plea bargain at his arraignment that would have resolved the criminal charge with three days of community service rather than detention. (See SAC ¶¶ 17, 19-20, 34.) Denial of the ability to be released on one's own recognizance, instead of being detained, and of the opportunity to enter into a plea bargain that entails three days of community service, rather than five days of jail, constitute concrete and particularized injuries. Plaintiff s allegations that the existence of the detainer triggered the rejection of the community service recommendation and resulted in the imposition of bail conditions, satisfaction of which during the pendency of the detainer would have had adverse consequences for him, address sufficiently the causal connection prong of the *Lujan* standard.

There is a disjunct between the District Court's holding in this section of the Opinion that Plaintiff had sufficiently pled that the detainer caused him to be denied release on his own recognizance for standing purposes, and its holding that dismissed Plaintiff's FTCA claim for false arrest and imprisonment on the basis that Plaintiff had failed to sufficiently plead that the Federal Defendants caused his confinement.

[15] The Assistant District Attorney ("ADA") was explicit about the detainer being the cause of the request for $1 bail, rather than the bail being set because of the misdemeanor charge. *See*, SAC ¶21 (A13-14), where the ADA, Ms. Dunnan, states, "Given the ICE detainer, People request that $1 bail be set." Plaintiff's attorney then reiterates that same request for $1 bail, and the $1 bail was set by the arraignment Judge, because Plaintiff would not have been released due to the detainer in any event, and the $1 bail would allow him to receive time credit toward any eventual sentence he might have received on the misdemeanor charge.

would be eligible for time credit in the event he were to be eventually sentenced on the

public lewdness charge that was then pending against him.  Plaintiff has also pled that

even had he paid the $1 bail, he would not have been released from custody because of

the detainer.[16]  Plaintiff has also pled that – pursuant to the City's policies and practices

– as soon as a detainer is lifted in circumstances where $1 bail had been set the $1 bail

is paid automatically by DOC, and that once the detainer was lifted on October 1, 2013

he was immediately released without he or anyone he knows having taken any steps to

pay the $1 bail.[17]  It was thus not at all speculative for Plaintiff to plead that he would

have continued to have been held by DOC had he paid the $1 bail while the detainer

was still in effect.  Every fact pled - and the documents incorporated by reference in

support of those facts - militates ineluctably toward the conclusion that it was the

detainer, and solely the detainer, holding Plaintiff in custody for the four days following

his arraignment, and that he would not have been released if he had paid the $1 bail

---

[16] The $1 bail is also a traditionally purely nominal amount.  No Criminal Court judge
would set $1 as an actual bail amount and think that the potential loss of the $1 would
possibly serve as a deterrent to a defendant's flight.

[17] Defendants improperly sought below to rely upon a DOC Transaction List that was
not "incorporated into the Complaint by reference" such that it could be considered
on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).  See, *Blue Tree Hotels Inv.
v. Starwood Hotels & Resorts*, 369 F.3d 212, 217 (2d Cir. 2004) (permitting
consideration of "any documents that are either incorporated into the complaint by
reference or attached to the complaint as exhibits").  The Transaction List purported
to show that DOC had - without Plaintiff's knowledge - taken $1 from Plaintiff's
inmate account.  As has been clearly and unequivocally pled, however, neither
Plaintiff nor anyone he knows took any steps to pay the $1 bail.

during those four days.  *See* e.g., *Morales v. Chadbourne*, 235 F. Supp. 3d 388, 398-99

(D.R.I. 2017):

> In light of these [proximate cause] principles, [ICE] Agent Donaghy's
> argument that he did not cause the detention is disingenuous at best.
> Without Agent Donaghy's decision to issue the detainer and direction to
> RIDOC to abide by such detainer, Ms. Morales would have been free to
> leave the courthouse after her arraignment Monday afternoon. *Morales II*,
> 793 F.3d at 218 ("[t]he natural consequence of Donaghy issuing the
> detainer was that Morales would be detained for up to 48 hours. Donaghy
> cannot argue otherwise. The detainer he issued, on its face, instructed ACI
> officials to 'detain the alien for a period not to exceed 48 hours.").

The District Court was also in error in holding that Plaintiff's confinement was

otherwise privileged because the DOC was relying on the bail.  As discussed, the DOC

had a policy and practice of automatically paying $1 bail for inmates and releasing them

once their detainers were lifted (which is precisely what happened with Plaintiff on

October 1, 2013, once the September 27, 2013 was lifted).  The $1 bail was not holding

Plaintiff in custody at all.  Plaintiff's confinement pursuant to an immigration detainer

also cannot be privileged because Plaintiff has also pled facts demonstrating that DOC

actually knew and posted on their publicly accessible Inmate Lookup Service website

(A62), and that Defendant Outlaw likewise knew - or should have known upon the most

rudimentary inquiry - that Plaintiff had been born in New York and was thus a native-

born U.S. Citizen who categorically could not be the subject of an immigration detainer.[18]

Bail would have been potentially relevant to Defendants' defenses in this case if it had been set in a real amount that was actually holding Plaintiff in custody, and if Plaintiff did not pay it when paying it would have secured his release. Here that is not the case. This case is similar in that regard to *Miranda-Olivares v. Clackamas County*, 2014 U.S. Dist. LEXIS 50340 (D. Ore. 2014), where the plaintiff was arrested for violating a domestic violence restraining order and at her arraignment the court set $5,000 bail (which would be satisfied with a payment of $500). Id. at *5. As in the case at bar, the plaintiff in *Miranda-Olivares* was informed that she would not be released even if bail was posted, due to the immigration detainer. Despite the existence of the bail, the Court held that she had been detained "based <u>solely</u> on a federal immigration detainer (Form I-247)[19] issued by the United States Immigration and Customs Enforcement ('ICE'), an agency of the Department of Homeland Security ('DHS')," *Miranda-Olivares* at *1 (emphasis added), and entered summary judgment in

---

[18] 8 C.F.R. § 287.7(a) provides that "[a] detainer serves to advise another law enforcement agency that the Department [DHS] seeks custody <u>of an alien</u> presently in the custody of that agency, for the purpose of arresting and removing <u>the alien</u>." (emphasis added).

[19] This is the same "Immigration Detainer – Notice of Action" form (A32) that was lodged against Plaintiff. *See*, the bottom left hand corner of the document, where it is denoted as DHS Form I-247.

the plaintiff's favor against the county that detained her as to liability on her claim for violation of her right to be free from unreasonable seizure under the Fourth Amendment.[20] The Court noted that "Miranda-Olivares's family was willing and able to pay the $500.00 bail, but did not do so because of the statements by Jail officials [that she would not have been released even if the bail were paid]." Id. at *6. Ms. Miranda-Olivares pled guilty to the charges for which she was arrested, and "was sentenced to 48 hours in jail with credit for time served and probation."[21]

---

[20] See also, *Morales v. Chadbourne*, 235 F. Supp. 3d 388 (D.R.I. 2017) (granting plaintiff's motion for summary judgment against the ICE agent who wrongfully lodged an immigration detainer against her, the ICE agent's supervisor, and the USA. The *Morales* decision concludes as follows, with words that are equally (or *a fortiori*, given that Plaintiff's New York nativity was immediately visible on NYC DOC's website) applicable in the instant case:

> The facts of this case are disturbing on many levels. The fact that a United States citizen was held in prison on an erroneous immigration detainer without probable cause for even one night should concern all Americans. Law enforcement agencies that are charged with enforcing immigration laws need to go above and beyond in crafting and executing constitutional policies and procedures to prevent and avoid the egregious errors that happened in this case. Federal officers need to follow those procedures with an eye toward protecting the constitutional rights of all. It is clear to the Court that the result of this ludicrous series of events is that Ms. Morales was humiliated, kept from her family, and unjustly treated like a criminal.

Id. at 409.

[21] It is not discussed in the *Miranda-Olivares* opinion whether she would or would not have been eligible for the time credit had she paid the bail. In New York, however, one cannot receive time credit toward a sentence unless there has been some amount of bail set concerning that charge. *See*, SAC ¶18 (A12).

Plaintiff in the case at bar was informed of the existence of the ICE detainer at his arraignment, and the $1 bail was only set - as per the regular practices of the NY City Criminal Courts - so he could potentially get time credit, in the event that he would eventually be convicted of and sentenced on the misdemeanor, for the time that he had to be in custody anyway due to the ICE detainer.[22]  For the District Court to, in essence, require for him to have paid the $1 bail as a condition precedent to bringing suit would be to require him to have engaged in a futile gesture that was contrary to his liberty interests.  If he had paid the $1 bail while the detainer was still lodged, such would have been futile, since he would not have been released due to the detainer.[23]  It would also have been contrary to his liberty interests since all he would accomplish by doing so would be to render himself ineligible to possibly receive time credit for time he had to be in jail anyway due to the detainer.  The federal courts cannot place a person who finds him or herself situated as Plaintiff was herein in such an unjust Catch-22, where he or she must either, on the one hand, insist on paying the $1 bail (and still being held

---

[22] Plaintiff did not ultimately need to avail himself of any time credit, as the Public Lewdness charge for which he had been arrested was ultimately dismissed in its entirety.  SAC ¶ 52 (A19).

[23] See, e.g., Galarza v. Szalczyk, 745 F.3d 634, 637 (3d Cir 2014):

> The detainer was accompanied by neither a warrant, an affidavit of probable cause, nor a removal order. That same day, a surety company posted bail for Galarza, and a Lehigh County Prison official told Galarza that he would be released. Shortly thereafter, the same official informed Galarza that he would not be released because he was the subject of a detainer.

in jail anyway on the detainer) and thereby be unable to get time credit for the time he or she was held in jail due to a detainer, or, on the other hand, retain the ability to get time credit for the time when he or would have to remain in jail anyway due to an unlawful detainer, but forfeit the ability to bring a suit for damages for unlawful confinement for the time he or she was unlawfully held in custody due to the detainer.[24]

In *Mercado v. Dallas Cnty.*, 229 F. Supp. 3d 501 (N.D. Tex. 2017) the District Court accepted the plaintiffs' arguments that it would have been futile for them to post bail, since they would have continued to be held by Dallas County on immigration detainers even were they to have done so. The District Court in *Mercado*:

> conclude[d] that the allegations in the amended complaint are also sufficient to plausibly allege that Dallas County had a widespread and widely known practice of refusing to release on bond pretrial detainees with immigration holds, that bond was set for each of the plaintiffs, and that, despite bond being set, each plaintiff was denied pretrial release on bond either because (i) he attempted to post bond and it was refused, or (ii) any attempt to post bond would have been futile due to Dallas County's widely known practice of refusing to release on bond pretrial detainees who were subject to immigration holds.

*Mercado* at 518-19.

It is clear from the facts pled, and the reasonable inferences to be drawn

---

[24] The District Court's reference to Plaintiff's "failure to tender the bail" (A73) also assumes that Plaintiff would have had any possible idea that he faced such an unjust choice, when he - having been born in New York - was informed out of the blue at his arraignment that there was an immigration detainer that had been lodged against him, and when all the people in the courtroom who were discussing his fate (the prosecutor, his own attorney, and the judge) all immediately and quickly agreed that $1 bail would be set so as to allow him the possibility of receiving time credit for time that he would be held in custody anyway due to the detainer.

therefrom, that Plaintiff's $1 bail was set solely because Defendant Outlaw lodged an

ICE detainer against him, and that the lodging of the detainer caused him to be held

for four days in DOC custody when he would otherwise have been at liberty.  The

District Court's holding to the contrary, and the dismissal of Plaintiff's FTCA claim

for false arrest and imprisonment, were therefore in error.


A.     Plaintiff's FTCA Claim for Abuse of Process

The District Court erred in holding that Plaintiff failed to sufficiently allege that

the DHS Defendants had an improper purpose in lodging the immigration detainer

against him (A74-75).  Plaintiff has alleged that neither Outlaw nor other employees of

DHS made any inquiries - including but not limited to checking its own or DOC's

readily available records which stated clearly that Plaintiff had been born in New York -

to seek to ascertain whether in fact Plaintiff was a U.S. citizen or whether the detainer

was otherwise improperly issued with regard to Plaintiff, either before it was issued or

at any point during the four days that Plaintiff was detained because of it.  Plaintiff has

also alleged that the detainer was lodged by Outlaw to keep Plaintiff in custody because

of the mere possibility that he was the Luis Enrique Hernandez-Martinez of Honduran

nationality whose detention was desired, and that Outlaw did not care - as evidenced by

the lack of even the most rudimentary effort to check whether Plaintiff was in fact this

individual, and despite readily available information indicating that Plaintiff was in fact

a native-born citizen - whether or not the wrong person was detained pursuant to the

detainer that he lodged on September 27, 2013.  SAC ¶¶49-51 (A19).  This sufficiently

pleads an improper collateral objective for purposes of Plaintiff's abuse of process

claim.  See, *Cook v. Sheldon*, 41 F.3d 73, 79 (2d Cir. 1994) ("If Cook is right that the

Troopers employed a 'shoot 'em all, and let God sort 'em out' arrest psychology, their

actions were abhorrent to the Fourth Amendment.").[25]

     This principle is equally applicable in the Fourteenth Amendment abuse of

process context.  Indeed it appears that this irresponsible, blunderbuss approach to the

issuance of immigration detainers is not limited to Defendant Outlaw, but is widespread

among ICE agents.  *See*, e.g., *Morales v. Chadbourne*, 235 F. Supp. 3d 388, 401 (D.R.I.

2017):

> ICE statistics from 2009 show that Agent Donaghy personally issued 77
> detainers, 31 of which were later cancelled and only 2 led to an
> individual being taken into ICE custody. According to Director
> Chadbourne, a cancelled detainer indicates that the individual subject to
> the detainer is either a United States citizen or a lawful permanent
> resident. In other words, almost 50% of the detainers he issued that year
> were ultimately erroneous. Agent Donaghy cannot argue that his
> unlawful behavior would not have been apparent to an objectively
> reasonable officer. Where an individual's liberty is at stake, a 50/50
> success rate is not acceptable. Agent Donaghy's conduct in issuing a
> detainer on an obviously incomplete investigation was unlawful and that
> unlawfulness would have been apparent to an objectively reasonably
> officer. *Cox*, 391 F.3d at 31.

---

[25] The lack of probable cause to issue the detainer as to Plaintiff also supports
Plaintiff's abuse of process claim.  See, e.g., *Phelps v. City of New York*, 2006 U.S.
Dist. LEXIS 42926, at *16 (S.D.N.Y. 2006) ("Officers who promote or facilitate an
arrest and prosecution may be liable for abuse of process…. Furthermore, the
absence of probable cause is probative of the lack of justification for the officers'
actions and the existence of a collateral objective.") (internal citation omitted).

This passage was also set forth in the context of a discussion of a Fourth Amendment claim, but is equally applicable where the collateral objective is, as the District Court quoted from Plaintiff's brief in opposition below, "to cast a net so wide that a detainer would be lodged against anyone who had any overlapping pedigree information as the individual for whom an order of removal had been obtained (or who is sought via a detainer for other reasons), without doing even a rudimentary investigation to see if the person against whom the detainer is lodged is indeed the person actually sought." (A75).

The District Court erred in holding that this was insufficient to show an improper purpose, or that it was necessary for Plaintiff to show that Outlaw harbored some personal animus directed at him specifically. It is an improper purpose as a general matter for DHS to seek to do their jobs with a minimum of responsible effort by casting their net of immigration detainers so widely while failing to engage in even rudimentary checks as to whether or not the individuals caught in that net are in fact the actual targets of the detainers (and, further, whether they are in fact citizens of this country).

Discovery also may well show that Outlaw specifically targeted Plaintiff because he has a Hispanic surname. Indeed, the names of the plaintiffs in the cases cited herein - e.g., *Miranda-Olivares*, *Galarza*, *Morales* - involving similar claims of unlawful deprivation of liberty pursuant to wrongfully issued immigration detainers

disturbingly share this same ethnic characteristic. See, *Morales,* 235 F. Supp. 3d at

392:

> Ada Morales was born in Guatemala, and became a naturalized United
> States citizen on September 11, 1995 under her maiden name, Ada
> Amavilia Cabrera. She has a social security number and a United States
> passport. Despite this, Ms. Morales was held at the state prison on an
> Immigration and Customs Enforcement ("ICE") detainer that was issued
> solely based on her Hispanic last name and her Guatemalan birthplace.
> This twenty-four hour illegal detention revealed dysfunction of a
> constitutional proportion at both the state and federal levels and a unilateral
> refusal to take responsibility for the fact that a United States citizen lost her
> liberty due to a baseless immigration detainer through no fault of her own.
> There is plenty of blame to go around amongst the Defendants in this case.
> This opinion will attempt to sort it out, guided by the principle that: [T]o
> allow ICE to issue a detainer against an American citizen, with unlimited
> discretion and without any accountability, sets a dangerous precedent and
> offends any and all notions of due process.

(internal quotation and citation omitted).

The District Court also erroneously held that "as Plaintiff himself acknowledges,

local law enforcement agencies are 'not required under law . . . to accede to federal

immigration detention requests.' (See SAC ¶ 40). In light of the non-mandatory

nature of the 9/27/13 Detainer, Plaintiff s detention could not have been 'compelled'

by the Federal Defendants." As discussed, *supra*, this is a mis-rendering of the facts

pled, and the plain import of the City's local laws. Plaintiff has pled that while there is

no requirement under federal or state law that the City accede to any DHS detainers, the

City has chosen to mandate to DOC through its Local Law 62 of 2011 and Local Law

22 of 2013 that DOC enforce a significant number of DHS detainers, including, *inter*

*alia*, those that represent to DOC that DHS had obtained an order of deportation or

removal from the USA for the target of the detainer.  By lodging a detainer against

Plaintiff making that representation, DHS Officer Outlaw compelled Plaintiff's

detention by DOC.

The District Court's dismissal of Plaintiff's FTCA claim for abuse of process was

therefore in error.


B.    Plaintiff's FTCA Claim for Violation of Right to Due Process

The District Court held that "because the FTCA generally waives sovereign

immunity only as to claims that could have been brought against private individuals,

Plaintiff's due process-based claim under the New York State Constitution would not be

viable unless it could be asserted against a private individual based on purely private

conduct." (emphasis added).  The District Court's addition of this underlined phrase

was error.  28 U.S.C. § 1346(b)(1) requires simply that the claim against the USA arose

"under circumstances where the United States, if a private person, would be liable to the

claimant in accordance with the law of the place where the act or omission occurred."

There is no requirement that the private person's liability has to be based on purely

private conduct – only that a private person would be subject to liability under similar

circumstances.

Private parties are more easily sued for violations of due process under the NY

constitution than under the U.S. Constitution, and its state action requirements are less

rigid.  See, *Sharrock v. Dell Buick-Cadillac, Inc.*, 45 N.Y.2d 152, 158-60 (1978):

In contrast to the due process clause of the Fourteenth Amendment, which is phrased in terms of State deprivation of life, liberty or property, section 6 of article I of the New York Constitution guarantees that "[no] person shall be deprived of life, liberty or property without due process of law." Conspicuously absent from the State Constitution is any language requiring State action before an individual may find refuge in its protections. That is not to say, of course, that the due process clause of the State Constitution eliminates the necessity of any State involvement in the objected to activity. Rather, the absence of any express State action language simply provides a basis to apply a more flexible State involvement requirement than is currently being imposed by the Supreme Court with respect to the Federal provision.

(internal citations omitted).

*Sharrock* concerned an action against a private party auto repair shop concerning its use of garagemen's liens. The NY Court of Appeals held that the plaintiff had properly invoked the due process protections of Article I, § 6 of the New York State Constitution against the private party defendant, affirmed the Appellate Division's holding that certain provisions of New York's Lien Law were unconstitutional under Article I, § 6, and affirmed the Appellate Division's remand of the case to the Westchester County Supreme Court for a trial as to damages.[26] Since a private person

_____

[26] See, *Sharrock v. Dell Buick-Cadillac, Inc.*, 56 A.D.2d 446, 453 (App. Div. 1977) ("Thus, it was ultimately found in *Hernandez [v. European Auto Collision, Inc.*, 487 F.2d 378 (2d Cir. 1973)], as here, that there was no dispute about the fact that defendant enforced a lien on plaintiff's car by selling it at auction pursuant to section 200 of the Lien Law, without affording plaintiff an opportunity for a hearing. It was also concluded that such action constituted a denial of due process and that there remained for determination only the issue of damages."). See also, *Sharrock*, 56 A.D.2d at 455 ("action remitted to the Supreme Court, Westchester County, for a trial

can be held liable for damages in New York for violation of Article I, § 6 of the New

York State Constitution, so too can the USA be held so liable under the FTCA for its

DHS employees' actions and omissions.[27]  That some aspect of state involvement is still

required to bring an action against a private party for due process violations under

Article I, § 6 is beside the point and, in the case at bar in any event, is easily satisfied.

Defendant Outlaw – had he been a private person who caused the due process violation

– caused it through the instrumentality of the Criminal Court and the DOC.  Outlaw's

lodging of the detainer caused Plaintiff to be ineligible for a plea bargain that would

have had him be released from custody at his arraignment with a sentence of only

community service (and instead caused the prosecutor's plea offer to change so that its

acceptance would require a jail sentence), and caused Plaintiff to be held pursuant to the

detainer rather than being released on his own recognizance at his arraignment.  SAC

¶¶17-34 (A12-16).

---

on the issue of damages as raised by plaintiff's complaint and defendants' counterclaim.").

[27] The District Court's citation to *Appolon v. United States*, 2017 U.S. Dist. LEXIS 145925 (E.D.N.Y. Sep. 6, 2017) was thus inapposite.  In *Appolon*, Plaintiff's due process claim was held to have lacked a private analogue because the jurisdiction in question was Georgia and "[i]t is well established that the Due Process Clause of the Georgia Constitution only protects Georgia citizens against state action, and does not affect the conduct of other private individuals."  *Id.* at *43 (quotation and citation omitted).  As discussed, New York's jurisprudence concerning Article I, § 6 of the New York State Constitution is decidedly different, and allows for suits for damages against private individuals.

The District Court's dismissal of Plaintiff's FTCA claim for violation of
Plaintiff's right to due process was therefore in error.

C.      Plaintiff's FTCA Claim for Negligence

The District Court also erred in holding that Plaintiff's negligence claims
should be dismissed for lack of a private analogue in New York State law.  While
under New York law one may not sue members of law enforcement for negligent
investigation that leads to a false arrest, one may sue a private party for negligence
that leads to an arrest.  That is the standard under the FTCA.  See, e.g., *Liranzo v.
United States*, 690 F.3d 78, 86 (2d Cir. 2012) ("[T]he Act requires a court to look to
the state-law liability of private entities, not to that of public entities, when assessing
the Government's liability under the FTCA [even] in the performance of activities
which private persons do not perform." ) (quoting *United States v. Olson,* 546 U.S.
43, 46 (2005)) (brackets in original).  See also, *Liranzo* at 95:

> There is some suggestion in the case law that the proper analogy may be
> to state law enforcement conducted by police officers instead of a
> citizen's arrest. In *Muniz*, the Court endorsed a private analogy to the
> liability of states and state jailors. *Muniz*, 374 U.S. at 159-60. And at
> least one court, the Northern District of California, has found the
> analogy to law enforcement persuasive in the context of an FTCA claim
> based on an immigration detention. See *Munyua*, 2005 WL 43960, at *4,
> 2005 U.S. Dist. LEXIS 11499, at *12 ("The fact that the challenged
> activities took place at the border does not negate the analogy to law
> enforcement . . . ."). But in *Olson*, the Court instructed that "a court
> [must] look to the state-law liability of private entities, not to that of
> public entities, when assessing the Government's liability under the
> FTCA . . . ." 546 U.S. at 46 (emphasis added).

This Court, in its decision last year in *Watson v. United States*, 865 F.3d 123, 134 (2d Cir. 2017), therefore erred when it dismissed an FTCA claim for negligence under the misplaced rationale that "[u]nder New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution." *Watson* at 134, quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (emphasis added). It is respectfully submitted that this error should be rectified herein.

What is pertinent to the analysis of Plaintiff's FTCA claim for negligence is that, under New York law, private parties may be held liable for damages for their negligent actions and omissions that causes a plaintiff's loss of liberty. *See*, e.g., *Martin v. Adler*, 135 Misc. 2d 383 (Sup. Ct. 1987). *Martin* arose after the District Court for the S.D.N.Y. declined to exercise pendant jurisdiction over New York state law claims against a private party defendant in a civil rights case brought pursuant to 42 U.S.C. § 1983. After those state law claims were re-filed in New York State Supreme Court, the private party defendant moved to dismiss. In denying the private party's motion, the Court held:

> With respect to the claims of negligence, false arrest, and assault, the motion [to dismiss] is denied. Plaintiffs sufficiently allege a cause of action in negligence by charging that defendant's reckless disregard of the facts as to the location of his property line in relation to the position of the plaintiffs on November 24, 1984, was the cause of their arrest.

*Martin* at 389.[28]

Plaintiff has sufficiently pled facts which state a claim for the DHS Defendants' negligence in lodging the immigration detainer against him without having made any reasonable inquiries - either before the detainer was issued or at any point during the four days it was in effect - that would have informed them that Plaintiff was not the person meant to be targeted by the detainer (e.g., that Plaintiff was not of Honduran nationality, that his middle name was not "Enrique," and that his last name was not "Hernandez-Martinez"), or that would have informed them, based upon readily available information (including DOC's own publicly-accessible Inmate Lookup Service website), that Plaintiff was born in New York and thus was a U.S. citizen who, *ipso facto*, could not lawfully be the subject of an immigration detainer. SAC ¶¶13-16, 42-51 (A11-12, 17-19, 62).

The District Court's dismissal of Plaintiff's FTCA claim for negligence was therefore in error.

---

[28] This Court in *Liranzo* also reminded that, concerning the FTCA, the Supreme Court has "observed that the statutory phrase 'under like circumstances' does not mean 'under the same circumstances.'" *Liranzo* , 690 F.3d at 87 (quoting *Indian Towing Co. v. United States*, 350 U.S. 61, 64 (1955)). In any event, even were it proper to look at the availability of claims against governmental defendants under state law when analyzing FTCA claims (which it is not), it must be noted that New York State courts do recognize claims for ministerial negligence that leads to false imprisonment. See, e.g., *Ostrowski v. State*, 186 Misc. 2d 890 (Ct. Cl. 2001) (granting claimant's motion for partial summary judgment on liability for ministerial negligence of court clerk which resulted in claimant's arrest on a warrant).

## THE DISTRICT COURT ERRED IN DISMISSING
## PLAINTIFF'S *MONELL* CLAIMS

A.    Plaintiff's *Monell* Claim Based Upon the City's Official Policy Pursuant to Its
       Local Laws

The District Court erred in holding that Plaintiff made only "generalized

allegations, lacking specificity, about the City's propensity to detain 'large numbers' of

people based on immigration detainers, and conclusory allegations as to the likelihood

that he would have been kept in custody absent the ICE detainer."  As discussed, *supra*

at pages 9-12, 21-22, and 33, the City's Local Laws in effect in September of 2013

mandated that DOC enforce DHS detainers that represented - as did the detainer lodged

against Plaintiff - that DHS had obtained an order of deportation or removal from the

United States for the target of the warrant.[29]  As also discussed, *supra* at pages 4-8, 17,

and 22-30, Plaintiff has also pled in a detailed and non-conclusory manner (that is also

clear from the transcript of his arraignment) that the $1 in nominal bail was requested

by the prosecutor and his lawyer, and imposed by the judge at his arraignment, solely

because of the DHS detainer, and that it would have been futile for Plaintiff to pay it

_____

[29] At that time Local Law 62 of 2011, and Local Law 22 of 2013, additionally
required DOC to honor DHS detainers for a number of other categories of inmates in
DOC custody as well, including, *inter alia*, inmates who had been charged with or
convicted of an array of delineated crimes, or who were identified as a known gang
member in the national crime information center's database, or who were identified
as a possible match in the terrorist screening database.  (A35, 39-43).

since he would not have been released by DOC while the detainer was in effect. Had he paid the $1 bail prior to the lifting of the detainer all that Plaintiff would have accomplished would be to render himself ineligible for time credit for the time that he would have to spend in DOC custody anyway due solely to the detainer. Plaintiff has thus specifically pled that the City's official policy (mandated through its Local Laws) directly caused his unconstitutional detention in DOC custody. His *Monell* claim stemming from the City's official policy has therefore been properly pled, and states a cause of action. See, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) ("Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.").[30]

The City was not required under federal or state law to accede to DHS detainers. See, *Galarza v. Szalczyk*, 745 F.3d 634 (3d Cir. 2014); see also, *Miranda-Olivares v. Clackamas County*, 2014 U.S.Dist.LEXIS 50340 (D. Or. 2014). Having chosen to mandate through its Local Laws that its DOC enforce DHS detainers for various categories of inmates in its custody that included the Plaintiff, however, the City cannot

---

[30] As also discussed, *supra* at page 21, n. 12, the City has already conceded that its policy caused DOC to honor the DHS detainer, stating on page 13 of its moving brief (docket # 44) that "[i]nsofar as pertinent to plaintiff's claims, effective September 17, 2013 [sic – the detainer was lodged on September 27, 2013], under the City's Administrative Code, the DOC honored detainers, such as plaintiff's, where there was an order of removal or deportation …."

be heard now to deny that its policy caused Plaintiff's detention.  See, e.g., *Galarza v. Szalczyk*, 745 F.3d 634 (3d Cir. 2014), which also involved the detention of a native-born U.S. citizen (who, like Plaintiff in the case at bar, also protested to his jailors that he was a citizen) (SAC ¶35, A16) pursuant to Lehigh County's policy of enforcing immigration detainers lodged by DHS.  In *Galarza* the Third Circuit reinstated the plaintiff's Fourth Amendment *Monell* claim, holding that:

> ... 8 C.F.R. § 287.7 does not compel state or local LEAs [Law Enforcement Agencies] to detain suspected aliens subject to removal pending release to immigration officials. Section 287.7 merely authorizes the issuance of detainers as requests to local LEAs. Given this, Lehigh County was free to disregard the ICE detainer, and it therefore cannot use as a defense that its own policy did not cause the deprivation of Galarza's constitutional rights.

*Galarza* at 645.  See also, *Miranda-Olivares v. Clackamas County*, 2014 U.S.Dist.LEXIS 50340, at *12 (D. Or. 2014) ("In this case, any injury Miranda-Olivares suffered was the direct result of the County exercising its custom and practice to hold her beyond the date she was eligible for release based solely on the ICE detainer.").

The District Court's dismissal of Plaintiff's *Monell* claim based upon the City's official policy pursuant to its Local Laws was therefore in error.

B.    Plaintiff's _Monell_ Claim Based Upon the City's Failure to Properly Train its Employees

The District Court also erred in dismissing Plaintiff's _Monell_ claim based upon the City's failure to properly train its employees. As discussed _supra_, Plaintiff has set forth that the City's Local Laws required DOC to enforce DHS detainers for large numbers of inmates who would be in its custody at any time, including those - like the one lodged against Plaintiff - that represented to DOC that an order of removal from the United States had been obtained for the detainer's target. The City would therefore find itself repeatedly addressing circumstances where DHS was lodging immigration detainers against inmates in its custody. A proper training regimen was therefore necessary so that DOC staff would have the requisite knowledge to be able to responsibly address issues that might arise in the course of handling such circumstances.

Plaintiff has also pled that the City had the following policies, practices, and customs:

> - of its DOC staff not engaging in any inquiry to see whether or not immigration detainers that have been lodged are erroneous or improper (even when put on explicit notice that a detainer was issued in error concerning the person in question or was otherwise invalid. for reasons including, but not limited to, the fact that the person to be detained was a U.S. Citizen), and that the City has failed properly supervise and train its DOC personnel to remedy this (SAC ¶81, A24);
>
> - that DOC staff are not trained on the procedures, practices, policies, laws, rules, and/or directives governing immigration holds (SAC ¶86, A25);

- that DOC staff are not trained to check the nativity of inmates as to whom purported immigration detainers are lodged, to see whether the inmate had been born in the USA and was thus a citizen, and therefore not subject to removal from the United States under the immigration laws (SAC ¶87, A25)

- that DOC staff are never trained on the procedures, practices, policies, laws, rules, and/or directives governing the effect, if any, an immigration detainer has on an inmate and an inmate's detention generally and/or on an inmate's right to be released from detention, confinement and incarceration (SAC ¶88, A25);

- of not ensuring that DOC staff are kept informed and/or instructed on the procedures, practices, policies, laws, rules, and/or directives governing immigration holds, and that no training and/or instruction is provided to its staff in those matters (SAC ¶89, A25-26);

- that DOC staff are not required to know and/or be familiar with DOC policies and/or directives governing immigration holds (and that DOC staff, including corrections officers, in fact are not even provided a copy of DOC directives) (SAC ¶90, A26).

The District Court was thus in error when it stated in its Opinion that Plaintiff had not sufficiently alleged training failures that were "endemic" and that Plaintiff had not sufficiently alleged facts indicating that the City was on "'notice' that its training deficiencies were causing violations of constitutional rights." (A86).

The proximate results of these endemic failures by the City to properly supervise and train its employees are reflected in Plaintiff's personal experiences while in DOC custody. Plaintiff has also pled that despite DOC having actual knowledge that he was born in New York (as reflected on DOC's Inmate Lookup Service website where it says "Nativity: New York") (A62), and despite Plaintiff's repeated protestations to DOC staff that he was a citizen, no member of DOC did anything to remedy his wrongful

detention and he was not released by DOC until the detainer was lifted four days after it was lodged (SAC ¶¶15, 23, 27, 35, 42-45) (A12-18). Plaintiff has also pled that despite being instructed explicitly on both the 9/27/13 detainer (A32) and the 10/1/13 cancellation of the detainer (A50) that they were to "provide a copy to the subject of this detainer," no one at DOC ever provided Plaintiff with a copy of either of these documents (SAC ¶¶46-47, A18).[31] If the City is going to - as it has, pursuant to its Local Laws - mandate that DOC enforce federal immigration detainers for large numbers of inmates who are in its custody, then it must properly train its staff to take responsible steps to avoid holding person A on a detainer targeting person B, and to train its staff to take responsible steps to ensure that no U.S. citizens are wrongfully held on immigration detainers.

Plaintiff's allegations concerning the City's failures to properly train its employees were considerably more specific and detailed than necessary to overcome a motion to dismiss on the pleadings. See, e.g., *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 130 n. 10 (2d Cir. 2004); *Castilla v. City of New York*, 2011 U.S. Dist. LEXIS 95619 at *10 (S.D.N.Y. 2011); *Holmes v. City of NY*, 2016

---

[31] As discussed *supra*, the 9/27/13 detainer falsely stated that Plaintiff was of Honduran nationality, that Plaintiff's middle name was Enrique, and that Plaintiff's last name was "Hernandez-Martinez." (SAC ¶15) (A12). If Plaintiff had been provided with a copy of the detainer and learned of these items of pedigree information on it that had nothing whatsoever to do with him, he may have found someone in DOC who was more receptive to him, and who would seek to quickly confirm that he was in fact not the person actually sought by the detainer and arrange for him to be quickly released.

U.S.Dist.LEXIS 27945, at *18-19 (S.D.N.Y. 2016). The District Court's holding that "there is no plausible factual pleading in the SAC with respect to the existence of an official policy or custom or failure to train that is causally related to the deprivation of Plaintiff's constitutional rights" (A86) (quotation and citation omitted), and its dismissal of Plaintiff's *Monell* claim based upon the City's failure to properly train its employees, was thus in error.

## CONCLUSION

Those aspects of the District Court's March 13, 2018 Memorandum Opinion and Order that granted the Defendants' motions to dismiss Plaintiff's FTCA and *Monell* claims should be reversed, and the case remanded for further proceedings, together with costs and such other and further relief as is just and proper.


Dated:     New York, New York
           July 27, 2018

                              _____/S/_____
                              JEFFREY A. ROTHMAN
                              315 Broadway, Suite 200
                              New York, New York 10007
                              (212) 227-2980

                              *Attorney for the Plaintiff-Appellant*

# CERTIFICATION

JEFFREY A. ROTHMAN hereby declares under penalty of perjury that the following is true and correct:

I am the attorney for Plaintiffs-Appellants herein. I hereby certify, pursuant to FRAP 32(a)(7)(C), that the brief of Plaintiffs-Appellants complies with the type-volume limitation contained in FRAP 32(a)(7)(B), in that it contains 12,911 words. The number of words has been determined by using the word-count function of the word processing program used to prepare this brief.

_____/S/_____
JEFFREY A. ROTHMAN