# 18-1103

In the

# United States Court of Appeals

## For the Second Circuit

LUIS HERNANDEZ,

*Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA, W. OUTLAW, UNITED STATES
DEPARTMENT OF HOMELAND SECURITY IMMIGRATION
OFFICER, #0862 and CITY OF NEW YORK,

*Defendants-Appellees,*

- and -

JOHN DOES,

*Defendant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

LAW OFFICE OF JEFFREY A. ROTHMAN
*Attorneys for Plaintiff-Appellant*
315 Broadway, Suite 200
New York, New York 10007
(212) 227-2980



# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………..……………………………….…….…..  ii

INTRODUCTION …………………………………………………………… 1

ARGUMENT……………………………..……….………………...………..  5

POINT I

THE DISTRICT COURT ERRED IN DISMISSING
PLAINTIFF'S CLAIMS BROUGHT UNDER THE
FEDERAL TORT CLAIMS ACT …................................................ 5

    A.    Plaintiff's FTCA Claim for False Arrest
          and Imprisonment ......................................................... 5

    B.    Plaintiff's FTCA Claim for Abuse of Process .............. 8

    C.    Plaintiff's FTCA Claim for Violation of Right
          To Due Process ............................................................. 9

    D.    Plaintiff's FTCA Claim for Negligence ........................13

POINT II

THE DISTRICT COURT ERRED IN DISMISSING
PLAINTIFF'S *MONELL* CLAIMS ………………….………… 17

CONCLUSION…………………………….………..……………………..25

# TABLE OF AUTHORITIES

*Adickes v. Kress & Co.*
398 U.S. 144 (1970) ...............................................................................12

*Amnesty Am. v. Town of West Hartford*
361 F.3d 113 (2d Cir. 2004)......................................................................24

*Appolon v. United States*
2017 U.S. Dist. LEXIS 145925 (E.D.N.Y 2017). ....................................13

*BeVier v. Hucal*
806 F.2d 123 (3d Cir. 1986)........................................................................6

*Bernard v. United States*
25 F.3d 98 (2d Cir. 1994)..........................................................................14

*Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*
531 U.S. 288 (2001) ........................................................................... 11-12

*Broughton v. State*
37 N.Y. 2d 451 (1975) ..............................................................................21

*Brown v. Mitchell*
308 F. Supp. 2d 682 (E.D. Va. 2004) ......................................................23

*Caban v. United States*
728 F.2d 68 (2d Cir. 1984)..........................................................................7

*Castilla v. City of New York*
2011 U.S. Dist. LEXIS 95619 (S.D.N.Y 2011). .......................................24

*Castro v. United States*
34 F.3d 106 (2d Cir. 1994)................................................................10, 14

*City of Canton v. Harris*
489 U.S. 378 (1989) ........................................................................... 23-24

*City of El Cenizo v. Texas*
890 F.3d 164 (5th Cir. 2018).....................................................................22

*Darnell v. Pineiro*
849 F.3d 17 (2d Cir. 2017)......................................................................16

*Dickerson v. Napolitano*
604 F.3d 732 (2d Cir. 2010)....................................................................21

*Evans v. Solomon*
2011 U.S. Dist. LEXIS 15624 (E.D.N.Y. Feb. 14, 2011) .........................10

*Hightower v. United States*
205 F. Supp. 2d 146 (S.D.N.Y 2002) .....................................................11

*Holmes v. City of NY*
2016 U.S. Dist. LEXIS 27945 (S.D.N.Y 2016) ........................................24

*Joseph v. United States*
2018 U.S. App. LEXIS 29304 (2d Cir. Oct. 18, 2018) .............................16

*Li v. Aponte*
2008 U.S. Dist. LEXIS 74725 (S.D.N.Y. Sep. 15, 2008)..................... 10-11

*Liranzo v. United States*
690 F.3d 78 (2d Cir. 2012)......................................................................15

*Mercado v. Dallas Cnty.*
2016 U.S. Dist. LEXIS 73784 (N.D. Tex. 2016)................................. 17-18

*Mercado v. Dallas Cnty.*
229 F.Supp.3d 501 (N.D. Tex. 2017) ......................................................19

*Miranda-Olivares v. Clackamas County*
U.S. Dist. LEXIS 50340 (D. Or. 2014). ...................................................19

*Mitchell v. City of N.Y.*
841 F.3d 72 (2d Cir. 2016)........................................................................6

*Monell v. Dep't of Soc. Servs.*
436 U.S. 658 (1978)................................................................................23

*Morales v. Chadbourne*
793 F.3d 208 (1st Cir. 2015) ...................................................................5, 7

*Morales v. Chadbourne*
235 F. Supp. 3d 388 (D.R.I. 2017): ....................................................9, 19

*Oliveira v. Mayer*
23 F.3d 642 (2d Cir. 1994).................................................................... 6-7

*People ex rel. Wells v. DeMarco*
2018 N.Y. App. Div. LEXIS 7748 (App. Div. November 14, 2018).................... 21-22

*Sharrock v. Dell Buick-Cadillac, Inc.*
45 N.Y.2d 152 (1978) ...............................................................................12

*Thunder Island Amusements, Inc. v. Ewald*
650 F. Supp. 2d 195 (N.D.N.Y 2009) ....................................................11

*Watson v. United States*
865 F.3d 123 (2d Cir. 2017) .....................................................................14

<u>INTRODUCTION</u>

Defendants' respective opposition briefs focus much of their efforts on a causation argument stemming from the $1 in nominal bail that was set at Plaintiff's September 27, 2013 arraignment solely due to the immigration detainer that was lodged against Plaintiff by U.S. Homeland Security Deportation Officer Outlaw and the City's policy to enforce it. Both Defendants would have this Court adjudicate this matter based upon an almost total inversion of the facts pled, and based upon an alternate (fictional) version of reality. Defendants posit a fictional world where Plaintiff's nominal bail of $1 was set at his arraignment independently of the immigration detainer. Defendants also posit a fictional world where Plaintiff could have been released from custody had he paid that $1 bail while the detainer was still active. Defendants further posit a fictional world where Plaintiff actually paid the $1 bail on the day the detainer was lifted, and that it was the payment of the $1bail rather than the lifting of the detainer that caused Plaintiff's release from custody.

This version of the facts posited by the Defendants is the opposite what was pled, however, and contrary to the way the New York City Criminal Courts and New York City Department of Corrections (DOC) treated immigration detainers in 2013 that purported - as the detainer lodged against Plaintiff purported - that an order of removal had been obtained for the target of the detainer. Plaintiff has

clearly pled (as is reflected in the arraignment transcript excerpts quoted from in the Second Amended Complaint) that the $1 bail was set at his arraignment due solely to the lodging of the detainer.[1]  Plaintiff has also pled that the setting of $1 bail was the routine practice of the Criminal Court for those who - but for a detainer rendering them ineligible for release in any event - would otherwise be released on their own recognizance without the setting of any bail, and that this was done to render those individuals eligible for time credit should a sentence on the crime(s) charged later be imposed.  Indeed, $1 is a paradigmatically nominal figure, and the quoted excerpt from the arraignment transcript makes it clear that it was set solely due to the detainer.  It was further pled that after the detainer was lifted no bail was set, and that Plaintiff was released on his own recognizance for the remainder of the prosecution.  SAC ¶¶15-22, 33-34 (A12-14, 16).  The $1 bail set at arraignment was, plainly, not an actual bail amount: it was a purely nominal figure, put in place solely so that Plaintiff could be deemed "held" pursuant to the public lewdness charge for purposes of being eligible for time credit, when the only thing that was actually holding him in physical custody was the detainer.

Plaintiff has also pled that neither he, nor anyone on his behalf, paid the $1 bail at any point.  For him to have done so would have been entirely futile and

[1] Plaintiff also pled - as also reflected in the quoted excerpts from the arraignment transcript - that the lodging of the detainer also rendered Plaintiff ineligible for a plea bargain that the Assistant District Attorney wanted to offer to him, that entailed community service.

irrational: had he paid the $1 bail he still would not have been released from custody because of the City's policy to accede to detainers representing that an order of removal had been obtained for the target of the detainer.[2] All Plaintiff would have accomplished if he had paid the bail would be to render himself ineligible for time credit (in the event that he were to eventually receive a sentence on the public lewdness charge) for time he would have to be in custody anyway due to the detainer. Plaintiff also pled that once the detainer was lifted on October 1, 2013 (after it had held him in custody for four days), the DOC per its policies and practices automatically paid the $1 bail because the detainer had been lifted and released him. SAC ¶¶22-32, 36-41, 80-85 (A14-17, 23-25); *see also*, Plaintiff's main brief at 9-12 (explaining the import of the City's Local Laws applicable in 2013).[3]

Defendants' causation arguments fly in the face of both logic and basic notions of fairness. On September 27, 2013 Deportation Officer Outlaw lodged

---

[2] Plaintiff also pled that the City held him on the detainer despite having actual knowledge that Plaintiff was a native-born U.S. citizen - indeed, noting on its own DOC website's inmate lookup screen that Plaintiff had been born in New York - and that an immigration detainer thus definitionally could not be lodged against him. Plaintiff also pled that he told a number of DOC's staff members that he was a citizen, and all of them responded that they could not help him. SAC ¶¶13, 35, 42-45, 48 (A11, 16-19).

[3] These Local Laws are a part of the City's Administrative Code, § 9-131. A current search of that section does not yield the local laws as they were in 2013, however. The applicable Local Laws in 2013 were Local Law No. 62 (issued in 2011) (at A33-38), and Local Law No. 22 (issued in February of 2013) (A39-47).

the detainer against Plaintiff, asking the City of New York to hold Plaintiff in its custody pursuant to the terms of the detainer for 48 hours (excluding weekends) beyond the time that Plaintiff would otherwise be released. The City's Local Laws (which were its official policy) in 2013 required its DOC to enforce detainers of precisely the sort lodged against Plaintiff, and pursuant to that policy it in fact enforced the detainer and held Plaintiff for the 48 hours excluding weekends as called for by the detainer.[4] That Defendants jointly and severally caused Plaintiff's unlawful four day detention following his arraignment through the issuance of (by the United States), and enforcement of (by the City of New York), the immigration detainer, could not be more plain or direct.

Defendants' remaining arguments are similarly without merit, and are addressed below.

---

[4] *See*, Plaintiff's main brief at 22 n. 13, which explained that September 27, 2013, the date of Plaintiff's arrest, was a Friday. Excluding the Saturday and Sunday that followed, 48 hours later was Tuesday, October 1, 2013, when the detainer was lifted and Plaintiff was released.

ARGUMENT

POINT I

THE DISTRICT COURT ERRED IN DISMISSING PLAINTIFF'S CLAIMS
BROUGHT UNDER THE FEDERAL TORT CLAIMS ACT

A.    Plaintiff's FTCA Claim for False Arrest and Imprisonment

As set forth *supra*, and in Plaintiff's main brief, it cannot be clearer that the

United States intended to confine Plaintiff, and caused his confinement.    Its

Deportation Officer lodged a detainer against Plaintiff asking that the City of New

York confine him, and pursuant to that detainer and the City's official policy in

effect at that time Plaintiff was confined by the City.[5]  The $1 in nominal bail that

was set at Plaintiff's arraignment had nothing whatsoever to do with his being held

in custody for any period of time.    There is nothing conclusory about these

allegations.  They are supported by detailed factual pleadings - and the documents

themselves in support thereof - concerning the lodging (and, four days thereafter,

the lifting) of the detainer, the City's official policy in effect at the time requiring

_____

[5] At page 10 of its brief, the USA argues that Plaintiff "cannot show ... that the government intended to confine him ...."  An intent to confine is shown in the very nature of the detainer, however.  See, e.g., *Morales v. Chadbourne*,  793 F.3d 208, 214-15 (1st Cir. 2015) ("Thus, the sole purpose of a detainer is to request the continued detention of an alien so that ICE officials may assume custody of that alien....").  *See also*, *Id.* at 218 ("The natural consequence of Donaghy issuing the detainer was that Morales would be detained for up to 48 hours. Donaghy cannot argue otherwise. The detainer he issued, on its face, instructed ACI officials to "detain the alien for a period not to exceed 48 hours.").

its enforcement of detainers of this type, and how the Criminal Court system routinely sets $1 in nominal bail for a Criminal Court defendant's time-credit benefit where a detainer otherwise prevents release from custody.

The issuance of the detainer also was not "otherwise privileged" or "justified by law" because there was no remotely legitimate basis for its issuance. Plaintiff has pled that neither Deportation Officer Outlaw nor other DHS employees engaged in even the most rudimentary and readily available checks to determine if Plaintiff in fact was the person actually sought by the detainer before issuing it. Had they done so, they would have quickly learned that Plaintiff was a different person (with a different name) than the individual sought by the detainer and, most importantly, that Plaintiff had been born in New York (thus rendering him entirely outside of the jurisdiction of the United States immigration authorities) and not in Honduras, as was the actual target of the detainer. SAC ¶¶13, 15-16, 42-45, 49-51 (A11-19). There was plainly no probable cause to lodge the detainer against Plaintiff under such circumstances. *See*, e.g., *Mitchell v. City of N.Y.*, 841 F.3d 72, 78 (2d Cir. 2016) ("[T]he failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause.") (quoting *Colon v. City of N.Y.*, 60 N.Y.2d 78, 82 (1983)); *see also*, *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir.1986) (holding that an "officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest"); *Oliveira v. Mayer,*

23 F.3d 642, 647 (2d Cir. 1994) (citing with approval *BeVier*'s holding that "[r]easonable avenues of investigation must be pursued [to establish probable cause] especially when, as here, it is unclear whether a crime had even taken place").[6]

The USA's citation to *Caban v. United States*, 728 F.2d 68 (2d Cir. 1984) on page 11 of its brief does not avail them. That decision was rendered after specific factual findings were made following a bench trial - not, as in the case at bar, following a motion on the pleadings, in which the facts must be viewed and inferences drawn in a plaintiff's favor - and arose in the materially different circumstances of a border entry, where the burden is on an entrant to establish his or her citizenship. In the case at bar, it has been pled that readily available government records stated that Plaintiff was not the person sought by the detainer, and that Plaintiff was born in New York, if only Outlaw or his colleagues had bothered to make even the most rudimentary inquiry into the matter prior to lodging the detainer upon Plaintiff.

---

[6] Detention pursuant to an immigration detainer is a Fourth Amendment seizure, and must be supported by probable cause. *See*, *Morales v Chadbourne*, 793 F.3d 208, 217 (1st Cir. 2015) ("[W]hile a detainer is distinct from an arrest, it nevertheless results in the detention of an individual. *See* 8 C.F.R. § 287.7. Morales alleges that after her criminal custody had terminated, she was detained for 24 additional hours based solely on the detainer issued by Donaghy. Because Morales was kept in custody for a new purpose after she was entitled to release, she was subjected to a new seizure for Fourth Amendment purposes — one that must be supported by a new probable cause justification.").

B.    Plaintiff's FTCA Claim for Abuse of Process

As discussed *supra*, it is not a "bald assertion" (USA's br. at 13) that the United States compelled Plaintiff's detention through the issuance of the detainer, which represented to the City that an order of removal had been obtained for Plaintiff.  While it is certainly true that compliance with immigration detainers by local authorities is not mandated under federal law, because the City's Local Laws in 2013 required DOC to enforce detainers such as the one lodged against Plaintiff, the issuance of the detainer as a factual matter compelled the City to hold Plaintiff in its custody pursuant to the detainer's specifications.

Plaintiff has also sufficiently pled that the USA had an improper collateral purpose in issuing the detainer.  Casting a net of immigration detainers in a manner that is recklessly wide, based only on some similarities between names, and on dates of birth, without conducting even the most rudimentary checks to determine if the target of a lodged detainer is in fact the person sought (or is, as here, in fact a native-born citizen of this country) shows a manifest indifference to how many dolphin get caught in the government's tuna nets.  Plaintiff has sufficiently pled facts stating an abuse of process claim based upon the USA's improper purpose of trying to cast a net so wide that a detainer would be lodged against anyone who had any overlapping pedigree information as the individual for whom an order of removal had been obtained (or who is sought via a detainer for other reasons),

without making even a rudimentary inquiry to see if the person against whom the detainer is lodged is indeed the person actually sought.

Plaintiff in his main brief (at 31) also cited to *Morales v. Chadbourne*, 235 F. Supp. 3d 388, 401 (D.R.I. 2017), which provided statistics obtained in discovery in that case,[7] showing that this irresponsible, blunderbuss approach to the issuance of immigration detainers is not limited to Outlaw, but is widespread among ICE agents. As also discussed in Plaintiff's main brief at 32-33, discovery also may well show that Outlaw specifically targeted Plaintiff because he has a Hispanic surname, which is also an improper collateral purpose.


C.     Plaintiff's FTCA Claim for Violation of Right to Due Process

While it is true that the United States has not waived its sovereign immunity with respect to claims that its employees have committed <u>federal</u> constitutional torts, the same is not true for claims that are based on state constitutions. All that is required under the FTCA is that a claim arise "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). This includes circumstances where a private person would be liable to the claimant in accordance with a provision of a state constitution.

---

[7] Plaintiff, of course, has not yet had the opportunity to conduct any discovery in this case, the case having been dismissed on the pleadings.

*Castro v. United States*, 34 F.3d, 106 (2d Cir. 1994), cited by the USA on

page 14 of its brief, is not to the contrary, and in fact supports Plaintiff's position:

> With respect to tort claims as to which the United States has waived
> its sovereign immunity, the FTCA requires the court to apply the
> substantive law of the place where the event occurred. The statute
> allows
>
> > claims against the United States, for money damages, . . . for
> > injury or loss of property, or personal injury . . . caused by the
> > negligent or wrongful act or omission of any employee of the
> > Government while acting within the scope of his office or
> > employment, under circumstances where the United States, *if a*
> > *private person*, would be liable to the claimant in accordance
> > with the law of the place where the act or omission occurred.
>
> 28 U.S.C. § 1346(b) (emphasis added); *see also* 28 U.S.C. § 2674
> (United States is liable with respect to claims allowable under FTCA
> "to the same extent as a private individual under like circumstances");
> *Guttridge v. United States*, 927 F.2d 730, 731-34 (2d Cir. 1991);
> *Caban v. United States*, 728 F.2d 68, 73-75 (2d Cir. 1984); [**15]
> *Proud v. United States*, 723 F.2d 705, 706 (9th Cir.) ("federal
> government's tort liability is co-extensive with that of a private
> individual under state law"), *cert. denied*, 467 U.S. 1252, 82 L. Ed. 2d
> 841, 104 S. Ct. 3536 (1984).

*Castro* at 110-111. While *Castro* refers to a lack of waiver of sovereign immunity

for "constitutional torts," it is clear that the federal (and not a state) constitution is

what is being referenced.

The District Court cases cited by the USA on page 14 of its brief are in error.

*Evans v. Solomon*, 2011 U.S.Dist.LEXIS 15624 (E.D.N.Y. Feb. 14, 2011) was a

*pro se* case, which cited incorrectly to *Li v. Aponte*, 2008 U.S.Dist.LEXIS 74725,

at *39-41 (S.D.N.Y. Sep. 15, 2008). The portion of *Li* cited to in *Evans* addressed an individual claim against a federal officer, not a claim against the USA under the FTCA, which looks to the availability of a cause of action against a private individual under similar circumstances. The same is true for *Thunder Island Amusements, Inc. v. Ewald*, 650 F. Supp. 2d 195, 201 (N.D.N.Y. 2009). In *Hightower v. United States*, 205 F. Supp. 2d 146, 151 (S.D.N.Y. 2002), the District Court dismissed the plaintiff's FTCA claim because the Federal Employee's Compensation Act is the exclusive remedy against the federal government for work-related injuries sustained by federal employees. The portion of *Hightower* cited by the USA addresses the uncontroversial proposition that *Bivens* claims for violations of the U.S. Constitution may only be brought against federal officers in their individual (and not their official) capacities. *Hightower's* footnote at 205 F.Supp.2d 154 n. 4, which states that "Section 1983 and the New York State Constitution only permit suits against state actors acting under color of state law, and not against the federal government or federal employees acting under federal law," is incorrect. While not at issue in the case at bar, a civil rights plaintiff indeed can bring federal constitutional claims against a private party defendant under 42 U.S.C. § 1983 under a number of theories of private party state action, including joint action with a state actor. *See*, e.g., *Brentwood Academy v.*

*Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288 (2001); *see also*, *Adickes v. Kress & Co.*, 398 U.S. 144 (1970).

Further, as discussed in Plaintiff's main brief, New York's Constitution allows for suits against private parties for violations of due process with greater latitude than that which is possible under the U.S. Constitution, and its state action requirements are less rigid than those of the U.S. Constitution. *See*, *Sharrock v. Dell Buick-Cadillac, Inc.*, 45 N.Y.2d 152, 158-60 (1978). It does not matter that in *Sharrock* "both a state official and a private party were defendants." USA's brief at 16. There was nothing in *Sharrock* indicating that the presence of the state official as a defendant in that case was necessary for the assertion of the claims against the private party defendant. The USA is also incorrect at page 16 of its brief that *Sharrock* involved only a claim for declaratory relief. As discussed at page 35 n. 26 of Plaintiff's main brief, the New York Court of Appeals, in addition to granting declaratory relief, affirmed the Appellate Division's remand of the case to the Westchester County Supreme Court for a trial as to damages.

As discussed in Plaintiff's main brief, since a private person can be held liable for damages in New York for violation of Article I, § 6 of the New York State Constitution, so too can the USA be held so liable under the FTCA for its employees' actions and omissions. That some aspect of state involvement is still required to bring an action against a private party for due process violations under

Article I, § 6 is beside the point and, in the case at bar in any event, is easily satisfied. Outlaw – had he been a private person who caused the due process violation – caused it through the instrumentality of the Criminal Court and the New York City DOC. Outlaw's lodging of the detainer caused Plaintiff to be ineligible for a plea bargain that would have had him be released from custody at his arraignment with a sentence of only community service, and caused Plaintiff to be held pursuant to the detainer rather than being released on his own recognizance at his arraignment. SAC ¶¶17-34 (A12-16).

Plaintiff has addressed the District Court's erroneous reliance upon *Appollon v. United States*, 2017 U.S. Dist. Lexis 145925 (E.D.N.Y. Sep. 6, 2017) at page 36 n. 27 of his main brief. The USA made no response to these arguments other than to repeat the District Court's holding.

D.     <u>Plaintiff's FTCA Claim for Negligence</u>

The viability of an FTCA claim hinges upon the potential liability of private parties under like circumstances under applicable state law. That under New York law negligence cannot serve as a basis for suing law enforcement officers in connection with the making of an arrest is irrelevant. The question when analyzing

an FTCA negligence claim is whether a <u>private</u> party (not a law enforcement officer or other state actor) could be sued for negligence under like circumstances.[8]

It is therefore clear that this Court erred in *Watson v. United States*, 865 F.3d 123, 134 (2d Cir. 2017) when it dismissed an FTCA claim for negligence under the misplaced rationale that "[u]nder New York law, a plaintiff may not recover under general negligence principles for a claim <u>that law enforcement officers</u> failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution." *Watson* at 134, quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (emphasis added).[9]

It was the panel in *Watson* that erred in not considering, and being bound by, this court's prior decision in *Castro v. United States*, 34 F.3d 106, 111 (2d Cir. 1994),[10] which looked carefully at this issue, and set forth how the "private

---

[8] In the section of its brief relating to Plaintiff's due process claim under the FTCA, the USA recognized, as it must, and quoted to authority setting forth, the FTCA's bedrock "private analogue" requirement. *See*, USA's brief at 15. In opposing Plaintiff's FTCA claim for negligence, however, the USA then disingenuously argues that looking to the availability of a claim against a private party - instead of analyzing the availability of a claim against a law enforcement officer, as the District Court erred in doing - "flips the FTCA on its head." USA's brief at 18.

[9] It was these erroneous rulings in *Watson* and *Bernard* that were the basis for the District Court's dismissal of Plaintiff's FTCA negligence claim in the case at bar. (A78).

[10] *Castro* was decided on September 2, 1994, and thus superseded *Bernard*, which was decided on May 25, 1994. *Bernard* was the basis for the panel's error in *Watson*. *Watson* made no mention of *Castro*, however (nor did the District Court

analogue" rule was to be applied to FTCA claims - and particularly FTCA claims for negligence - brought against the United States stemming from the actions and omissions of its law enforcement officers:

> In the present case, in seeking to apply the substantive law of New York, the district court looked to *Kolko v. City of Rochester*, 93 A.D.2d 977, 461 N.Y.S.2d 650, a case that did not deal with "private persons" but rather dealt with public officials. *Kolko* concerned the limited immunity that police officers enjoy when carrying out their official duties in good faith. It did not deal with the liability to which a private individual would be subject if he broke into the home of another and caused personal injury or property damage. Whatever other immunities the relevant state law may confer upon a private individual, *see*, *e.g.*, *Guttridge v. United States*, 927 F.2d at 731-34 (landowner immunity from liability for negligent maintenance of land on which public is allowed for recreation), it is clear that private individuals do not possess the immunities of government officials. *See Wyatt v. Cole*, 118 L. Ed. 2d 504, 112 S. Ct. 1827, 1831-34 (1992).

> In a suit against the United States under the FTCA, the United States is not entitled to defend on the basis of any official immunity that its executive employees individually might possess. *See Rivera v. United states*, 928 F.2d at 608-09. To the contrary, the United States may be held liable "to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. In this case, those circumstances included whatever authority was vested in the defendants by the applicable law with respect to their assistance in the narcotics raid that led to this lawsuit. *See Caban v. United States*, 728 F.2d at 74 (where

---

in the case at bar). And, neither the *Watson* panel, nor the District Court in the case at bar, considered the emphatic reminder from this court in *Liranzo v. United States*, 690 F.3d 78, 86 (2d Cir. 2012) - discussed in Plaintiff's main brief at pages 37 and 39 - that the FTCA "requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing the Government's liability under the FTCA [even] in the performance of activities which private persons do not perform" in connection with their analyses of the FTCA negligence claims that were before them.

immigration officers performing border-control function committed allegedly tortious acts, liability of United States assessed "in light of the liability that New York would impose upon one having a privilege to detain a would-be entrant who did not satisfactorily establish his right to enter"); although qualified immunity will not immunize the United States from liability, that lability [sic] must be assessed in light of the liability that New York would impose upon a person having legal authority to participate in the narcotics raid at issue in this case.

Castro alleged in her complaint that the entry resulted from defendants' "negligent and wrongful" conduct, and there are questions of fact as to the reasonableness of the defendants' conduct during that search. Thus, Castro must be allowed to pursue her common-law tort claims against the United States.

This panel is authorized to correct the clear error in *Watson* without convening an *en banc* panel.[11]  Alternatively, this panel may wish to circulate its draft decision to the other members of this court and solicit their input prior to its issuance.  *See*, *Darnell v. Pineiro*, 849 F.3d 17, 35 & n.13 (2d Cir. 2017).  If, however, this panel deems it necessary to convene an *en banc* panel to correct the *Watson* panel's plain error, then it indeed should do so.  *Watson's* analysis of the FTCA negligence claim in that case was in direct contravention to the FTCA's bedrock "private analogue" rule.  This error must be rectified and prevented from proliferating further.

---

[11] *Joseph v. United States*, 2018 U.S.App.LEXIS 29304 (2d Cir. Oct. 18, 2018) did not address the plainly erroneous holding in *Watson* concerning the FTCA negligence claim in that case.  The aspect of *Watson* that was implicated in *Joseph* was its holding - which is not at issue in the case at bar - concerning when the false arrest limitations period commenced.  *Joseph* at *2.  *Joseph* was also a non-precedential summary order.

Because a private party may be held liable for its negligence in connection with a plaintiff's arrest - which the United States does not dispute in its opposition brief - the District Court erred in dismissing Plaintiff's FTCA claim for negligence.

POINT II

## THE DISTRICT COURT ERRED IN DISMISSING PLAINTIFF'S *MONELL* CLAIMS

Plaintiff has addressed most of the City's causation arguments concerning the $1 nominal bail *supra*, as well as in Plaintiff's main brief.  The City also contorts the cases cited by Plaintiff in this regard.  None of the cases cited by Plaintiff suggest in any way that he was ever actually being held in custody due to the $1 bail rather than due to the detainer, or that if he had paid the $1 bail he could have been released while the detainer remained in effect.  *Mercado v. Dallas Cnty.*, 2016 U.S.Dist.LEXIS 73784 (N.D. Tex. 2016) ("*Mercado I*"), cited by the City at pages 14-16 of its brief, is inapposite.  In *Mercado I*, the many plaintiffs all had real - and not nominal - bail in amounts ranging from $500 to $102,500.  *Mercado I* at *10.  The District Court held that there was "no allegation that any one of them actually tendered bond in the requisite amount in order to become eligible for release on bond, and, absent specific allegations that the plaintiffs actually posted bonds, they did not have a right to be released regardless of the existence of an immigration detainer."  Under such a circumstance, where a real and not purely

nominal amount of bail has been set, it indeed would be a fair argument by a defendant that a plaintiff's time resulting from the detainer would only be compensable if the plaintiff showed a willingness to pay the actual bail and secure his or her release. Because bail had been set upon the plaintiffs in *Mercado I* due to their local charges, the plaintiffs in that case were not being held solely due to their respective immigration detainers. Only after their bail was actually paid (or they would have been able to pay it and also secure their release) were they able to claim that their detentions were solely caused by their respective immigration detainers, rather than by their local charges.[12] The District Court in *Mercado I* granted the plaintiffs leave to amend so that they could allege that they would have posted the bail if doing so would have been able to secure their freedom, and that posting the bail while the immigration detainers were in place would have been futile because of the immigration detainers, and the District Court "expresse[d] no view on plaintiffs' futility argument." *Mercado I* at 13-14, 32. As discussed in

_____

[12] Were they in New York, someone in the situation of these plaintiffs from *Mercado I*, in order to preserve their right to time credit toward a possible future sentence on their criminal charge(s) for time they would have to be in custody anyway due to the immigration detainers lodged against them, might be wise to seek to pay all but $1 of their bail. Such a payment of all but $1 would also demonstrate, for purposes of a civil suit for damages stemming from the unlawful lodging and / or enforcement of the detainers, that they were desirous of being immediately released as soon as the detainer was lifted. Such a circumstance is not at issue in the case at bar, however. Plaintiff herein would have been released on his own recognizance at arraignment but for the detainer, and that was why his bail was set at the purely nominal amount of $1.

Plaintiff's main brief at page 29, following the amendment, the District Court in *Mercado v. Dallas Cnty.*, 229 F. Supp. 3d 501 (N.D. Tex. 2017) ("*Mercado II*") issued a subsequent ruling following a further motion to dismiss that was made by Dallas County, and denied the County's motion to dismiss, rejecting the County's challenge to the plaintiffs' standing, based specifically on allegations that Dallas County would not release even individuals who had bail set nominally, and that it would have been futile for them to post the bail. *Mercado II* at 518-519.[13]

Plaintiff, like the plaintiffs in *Mercado*, has pled that while the detainer was lodged he would not have been released from custody if he had paid the $1 in nominal bail that was set solely to make him eligible for time credit for time he was going to be held on the detainer in any event. Plaintiff has also amply pled why $1 bail was routinely set by the Criminal Court in such circumstances, and that the City did not release individuals who had detainers lodged against them representing what Plaintiff's detainer represented (i.e., that an order of removal had

---

[13] Plaintiff was, likewise, similarly situated to the plaintiff in *Morales v. Chadbourne*, 235 F. Supp. 3d 388 (D.R.I. 2017) (*i.e.*, he was held in custody solely due to the detainer), except that in New York City - due to the particularities of its record-keeping and the way it credits time in custody - the Criminal Courts have a procedure whereby they set $1 bail for time-credit purposes for those individuals who, but for a detainer, would otherwise be released on their own recognizance. As for *Miranda-Olivares v. Clackamas County*, 2014 U.S. Dist. LEXIS 50340 (D. Ore. 2014), the bail-related circumstances in that case were discussed at pages 26-27 of Plaintiff's main brief. *See also*, *Miranda-Olivares at *12* ("In this case, any injury Miranda-Olivares suffered was the direct result of the County exercising its custom and practice to hold her beyond the date she was eligible for release based solely on the ICE detainer.").

been obtained for the target of the detainer). Viewing the facts and drawing reasonable inferences in the light most favorable to Plaintiff, it is clear that Plaintiff would have paid the $1 if that would have secured his release, and that he did not pay the $1 because doing so would not have secured his release.

The City also argues that Plaintiff's detention was privileged, because the detainer lodged against him represented that an order of removal had been obtained. As discussed *supra*, and in Plaintiff's main brief, however, the City's DOC's own records on its own website's inmate lookup screen stated that Plaintiff had been born in New York. Having been on actual notice that Plaintiff was a native-born U.S. citizen, the City is hard-pressed to argue that holding him on an immigration detainer (that, additionally, had a different name than Plaintiff's) was privileged.[14] Plaintiff also pled that he told a number of DOC's staff members that

---

[14] As with the federal employees, Plaintiff has likewise alleged that the City's employees did not engage in even the most rudimentary and readily available inquiry to determine if Plaintiff in fact was the person actually sought by the detainer, including checking its own records on its own publicly accessible inmate lookup website - available with the click of a finger from any computer – which stated that Plaintiff was born in New York. SAC ¶¶13, 15-16, 42-45, 48 (A11-19). *See also*, pages 6-7, *supra*. The City also oddly asserts at page 7 of its brief that "Hernandez does not allege that he offered to present (or have a family member or attorney present) identification materials or other documents establishing that he is a United States citizen." In addition to Hernandez's inherent difficulty in accessing such materials while he was being held in jail, it was not his burden to do so (nor was it his burden to prove that he was not Honduran-born person with the different name who was targeted by the warrant lodged against him). The City seized Plaintiff pursuant to the detainer and without a warrant. It is the City's burden to show probable cause for that seizure. Where, as here, "an arrest is not

he was a citizen, and all of them responded that they could not help him. SAC ¶¶13, 35, 42-45, 48 (A11, 16-19).

Further, New York's Appellate Division, Second Department issued a significant decision two days ago, holding that detention pursuant to an ICE detainer constitutes an arrest, and that such a detention is unlawful under New York State law. *See*, *People ex rel. Wells v. DeMarco*, 2018 N.Y. App. Div. LEXIS 7748 at *12-39 (App. Div. November 14, 2018). The *Wells* decision also rejected the position taken by the City in its opposition brief in the case at bar, that the City was permitted to rely upon the "collective knowledge doctrine" (which is also known as the "fellow officer rule") when it honors detainers representing that an order of removal had been obtained for the target of an immigration detainer. *See*, *Wells* at *22-27:

> [The Suffolk County Sheriff, and its *amicus*, the U.S. Department of Justice] contend that arrests based on detainers do not violate the Fourth Amendment and therefore would not violate the New York Constitution provision that mirrors it. As such, local law enforcement may rely upon the fellow officer rule by acquiring the necessary probable cause for a lawful arrest from ICE officers. We disagree.
> ....
> [W]hile it may be acknowledged that New York possesses broad reserved police powers, it does not follow that the existence of such powers supports civil immigration arrests by state and local law

made pursuant to a judicial warrant, the defendant in a false arrest case bears the burden of proving probable cause as an affirmative defense." *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010) (citing *Broughton v. State*, 37 N.Y.2d 451, 458 (1975)).

enforcement.

....

Thus, even if it is assumed that an ICE officer has probable cause to arrest for an immigration violation, the fellow officer, in this case the Sheriff's officers, must still make a "lawful" arrest. If there is no authority to arrest for a civil matter, such arrest cannot be considered "lawful." To adopt the position advocated by the Sheriff here would permit state and local law enforcement to assume the authority of an ICE officer, though not granted by state law, based upon nothing more than a request from ICE.

The Court in *Wells* summarized its holding as follows:

[W]e conclude that the Sheriff's policy, issued on December 2, 2016, directing the retention of prisoners, who would otherwise be released, pursuant to ICE detainers and administrative warrants is unlawful, and that Francis's detention by the Sheriff on December 11, 2017, which detention commenced after the termination of Francis's court proceeding that day, was thus unlawful.

*Wells* at *38.[15]

Thus, even had Plaintiff actually been the Honduran-born individual for whom there actually had been an order of removal issued (which, as discussed, the City was on actual notice that he was not), that still would not have permitted the City to detain him. The City's official policy in 2013 pursuant to its Local Laws - to hold individuals pursuant to immigration detainers where the detainers represent that an order of removal had been obtained for the target of the detainer - not only

_____

[15] The Court in *Wells* also specifically distinguished *City of El Cenizo v. Texas*, 890 F.3d 164 (5th Cir. 2018) - cited by the City at pages 19, and 22-23 of (and elsewhere in) its brief - and held that *Cenizo* did not provide it with guidance because of the significant differences between Texas and New York law. *Wells* at *34-36.

caused the violation of Plaintiff's constitutional rights (which is all that is required

for there to be municipal liability under *Monell*[16]), but the policy additionally was

itself unlawful.

Concerning Plaintiff's allegations concerning the City's failure to properly

train its employees, as discussed in Plaintiff's main brief he has alleged widespread,

endemic training failures and that the City was amply on notice that its training

deficiencies were bound to cause, and were routinely causing, violations of

constitutional rights. *See*, Plaintiff's main brief at 43-46. Plaintiff was not required

at the pleading stage to set forth a pattern of specific other people whose rights were

violated by the City's failure to properly train concerning immigration detainers.

*See*, e.g., *Brown v. Mitchell*, 308 F. Supp. 2d 682, 704 (E.D. Va. 2004) (citing *City*

---

[16] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The City refers repeatedly to Plaintiff's "single" *Monell* claim, which is true only insofar as there is a single municipal defendant. As discussed in Plaintiff's main brief, Plaintiff pursues his *Monell* claims under two separate theories - one based upon the City's official policy of enforcing immigration detainers that represent that an order of removal had been obtained concerning the target of the detainer, and one based upon the City's failure to properly train its employees - either of which independently supports the City's liability. Plaintiff's *Monell* claims against the City arises under the Fourth Amendment (stemming from his false imprisonment) and under the Fourteenth Amendment (stemming both from his detention without due process of law, and from his being denied the ability to accept the first plea bargain offered to him at his arraignment, due to the City's policy in 2013 of enforcing the type of detainer that was lodged against him). The City on page 19 of its brief claims to be unaware of Plaintiff's due process claims, which is odd, as they have been part and parcel of every aspect of the briefing in this case, both below and in this Court. Plaintiff also clearly pleads that the City violated his rights pursuant to both the Fourth and Fourteenth Amendments. SAC ¶¶92-93 (A26).

*of Canton v. Harris*, 489 U.S. 378 (1989) for the proposition that "when a failure to train claim posits the deprivation of a clear constitutional right that is implicated in recurrent situations, the presence of a pattern is not an element of the claim."). Nor was Plaintiff required to set forth in detail the specific deficiencies of the City's particular training program. Plaintiff has not yet had the benefit of discovery, which will allow him to obtain the information necessary to do so. *See*, e.g., *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 130 n. 10 (2d Cir. 2004); *Castilla v. City of New York*, 2011 U.S.Dist.LEXIS 95619 at *10 (S.D.N.Y. 2011); *Holmes v. City of NY*, 2016 U.S.Dist.LEXIS 27945, at *18-19 (S.D.N.Y. 2016). As set forth in Plaintiff main brief, however, Plaintiff in the SAC at ¶¶81, and 86-90 (A24-26)[17] has set forth in considerably more detail than necessary allegations concerning the City's deliberately indifferent training regarding immigration detainers, and that those training failures were bound to repeatedly cause the violation of constitutional rights.

---

[17] Plaintiff has also alleged that, as with Plaintiff, the DOC routinely does not provide copies of immigration detainers to the individuals they are lodged against, even when the detainers (as here) instruct them to. SAC ¶¶46-47 (A18).

<u>CONCLUSION</u>

The District Court's rulings dismissing Plaintiff's FTCA and *Monell* claims should be reversed, and the case remanded for further proceedings, together with costs and such other and further relief as is just and proper.


Dated:      New York, New York
            November 16, 2018

                                    _____/S/_____
                                    JEFFREY A. ROTHMAN
                                    315 Broadway, Suite 200
                                    New York, New York 10007
                                    (212) 227-2980

                                    *Attorney for the Plaintiff-Appellant*

## CERTIFICATION

JEFFREY A. ROTHMAN hereby declares under penalty of perjury that the following is true and correct:

I am the attorney for Plaintiffs-Appellants herein. I hereby certify, pursuant to FRAP 32(a)(7)(C), that the brief of Plaintiffs-Appellants complies with the type-volume limitation contained in FRAP 32(a)(7)(B), in that it contains 7,000 words. The number of words has been determined by using the word-count function of the word processing program used to prepare this brief.


_____/S/_____
JEFFREY A. ROTHMAN