# 18-1103

IN THE UNITED STATES COURT OF
APPEALS FOR THE SECOND CIRCUIT

LUIS HERNANDEZ,

*Plaintiff-Appellant*,

v.

UNITED STATES OF AMERICA, W. OUTLAW, UNITED STATES
DEPARTMENT OF HOMELAND SECURITY IMMIGRATION OFFICER
#0862, AND CITY OF NEW YORK,

*Defendants-Appellees,*

-and-

JOHN DOES,

*Defendants.*

*On Appeal from the United States District Court
for the Southern District of New York*

**BRIEF OF AMICI CURIAE THE AMERICAN CIVIL LIBERTIES UNION,
NEW YORK CIVIL LIBERTIES UNION, AND
NATIONAL IMMIGRANT JUSTICE CENTER**

OMAR C. JADWAT
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2660
ojadwat@aclu.org

CHRISTOPHER DUNN
ANTONY GEMMELL
AMY BELSHER*
New York Civil Liberties Union Foundation
125 Broad Street, 19th Floor
New York, NY 10004
Tel: (212) 607-3300
cdunn@nyclu.org
agemmell@nyclu.org
abelsher@nyclu.org

CODY H. WOFSY
SPENCER E. AMDUR
American Civil Liberties Union
39 Drumm Street
San Francisco, CA 94111
Tel: (415) 343-0785
Fax: (415) 395-0950
cwofsy@aclu.org
samdur@aclu.org

MARK FLEMING
National Immigrant Justice Center
224 S. Michigan Ave, Suite 200
Chicago, IL 60604
Tel: (312) 660-1628
mfleming@heartlandalliance.org

*Counsel for Amici Curiae*

*\* motion for admission forthcoming*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Fed. R. App. P. 26.1, amicus curiae the National Immigrant Justice Center states that its parent organization is the Heartland Alliance. The remaining amici curiae do not have parent corporations.

No publicly held corporation owns 10 percent or more of any stake or stock in any of the amici curiae.

/s/ Cody H. Wofsy
Cody H. Wofsy
May 6, 2019

## INTEREST OF AMICI CURIAE

Amici are non-profit civil rights organizations that serve immigrant communities in New York and across the country. They have litigated numerous cases involving immigration detainers, and they are currently representing a number of U.S. citizens around the country who have been improperly held for ICE. Their interest in this case is further described in their motion for leave.[1]

---

[1] All of the parties have consented in writing to the filing of this brief. Pursuant to Fed. R. App. P. 29(a)(4)(E), the undersigned counsel certifies that counsel for amici authored this brief in whole, and that no person other than amici curiae contributed money to preparing or submitting this brief.

## I. Detainer Holds Require Probable Cause.

The answer to the Court's first question is clear and emphatic: An immigration agent needs probable cause to issue a detainer, and a local law enforcement agency needs probable cause to extend a person's custody based on a detainer. Courts across the country have unanimously agreed. *See, e.g.*, *Morales v. Chadbourne*, 793 F.3d 208, 216-17 (1st Cir. 2015) (holding that, even a decade ago, this principle was "beyond debate"); *Alcocer v. Mills*, 906 F.3d 944, 954 (11th Cir. 2018); *Creedle v. Miami-Dade County*, 349 F. Supp. 3d 1276, 1304 (S.D. Fla. 2018) (collecting cases); *Roy v. County of Los Angeles*, 2018 WL 914773, *18 (C.D. Cal. Feb. 7, 2018); *see also Rodriguez v. United States*, 135 S. Ct. 1609, 1615 (2015) (extending seizure by minutes required new Fourth Amendment justification). Even the case the City relies on most heavily supports the conclusion that these new detentions are arrests. *See City of El Cenizo v. Texas*, 890 F.3d 164, 187-88 (5th Cir. 2018) (describing detainer hold as an "arrest").

## II. The Complaint Properly Alleges A Lack of Probable Cause.

Plaintiff's complaint, taken as true and with all inferences drawn in his favor, plausibly alleges that both Outlaw and the City officials lacked probable cause of removability. The complaint alleges that Plaintiff is a natural-born U.S. citizen, so not amenable to removal. JA 11. It also alleges that the name on the paperwork issued by ICE was different from Plaintiff's: The middle names do not

match, and the last name on the form was "Hernandez-Martinez," whereas Plaintiff's last name is "Hernandez." JA 15. Beyond the name discrepancy, both Outlaw and the City officials possessed Plaintiff's jail records, which clearly state that he is a U.S. citizen born in the United States. JA 17-19. And Plaintiff stated to multiple City officials, on multiple occasions, that he was a U.S. citizen. The complaint further alleges that neither Outlaw nor the City made any inquiries to determine Plaintiff's true identity, verify his citizenship or place of birth, or otherwise investigate his repeated citizenship claims. They instead relied exclusively on the possibility that Plaintiff and a foreign national with a similar but different name were the same person.

The name similarity alone is plainly insufficient to establish probable cause. Luis Hernandez is an extremely common name, shared by thousands if not tens of thousands of people. A Westlaw search indicates that some variation of the name—including with or without a hyphenated last name, and with various middle names—appears in 703 cases from around the country.[2] In fact Hernandez is the 11th most common surname in the United States.[3] More than a somewhat similar name is required to establish probable cause. *See Vazquez-Mentado v. Buitron*,

---

[2] *See, e.g.*, *Hernandez-Gonzalez v. United States*, 562 U.S. 1299 (2011); *Hernandez-Rodriguez v. United States*, 532 U.S. 984 (2001); *Bailey v. Pataki*, 708 F.3d 391 (2d Cir. 2013); *United States v. Soto*, 706 F. App'x 689 (2d Cir. 2009).

[3] U.S. Census Bureau, *Frequently Occurring Surnames from the 2010 Census*, Dec. 27, 2016.

2013 WL 2318636, *4-6 (N.D.N.Y. May 28, 2013); *Montoya v. New Mexico Dep't of Public Safety*, 2011 WL 13286159, *7 (D.N.M. Jan. 5, 2011) ("A jury could find that . . . [a] name discrepancy would have vitiated probable cause.").

Defendants have sought to rely on the fact that the birthdate on ICE's detainer matches Plaintiff's birthdate. JA 30-31. But that fact does not show that ICE had information that the individual subject to the removal order (Hernandez-Martinez) in fact shared Plaintiff's birthdate.

A far more plausible inference—and thus the one that must be drawn at the motion to dismiss stage—is that in ICE's confusion, it mixed some of Plaintiff's information (his birthdate, as obtained from the City) with Hernandez-Martinez's information (his name, nationality, and immigration status). Under the "Secure Communities" biometric interoperability program, all fingerprints that jails submit to the FBI for criminal background checks—along with associated biographical information like birthdates—are transmitted to the Department of Homeland Security for immigration database checks.[4] Outlaw likely took the date of birth provided by the City with Plaintiff's fingerprints and entered it into the detainer.[5]

---

[4] *See* https://www.ice.gov/secure-communities; DHS, *Biometric Interoperability Between DHS and DOJ*, at 4, Oct. 13, 2011, https://bit.ly/2Y2TN8T.

[5] Such errors are routine when ICE issues detainers and related paperwork. For example, consider the case of Peter Sean Brown (whom amicus ACLU represents). *See* Complaint, *Brown v. Ramsay*, Doc. 1, No. 18-cv-10279 (S.D. Fla.). Mr. Brown, a natural-born U.S. citizen, was held in a county jail pursuant to an ICE

3

That, of course, would supply no evidence that Plaintiff was, in fact, Hernandez-Martinez. The complaint therefore plausibly alleges that Outlaw lacked probable cause when he issued the detainer based exclusively on Plaintiff's similar but different name.

The complaint also plausibly alleges that the City lacked probable cause. The City invokes the fellow-officer rule to rely on ICE's probable cause determination. But even assuming that doctrine applies in this context, it cannot aid the City where ICE itself lacked probable cause. *See United States v. Colon*, 250 F.3d 130, 136 (2d Cir. 2001) (explaining that, in the context of a *Terry* stop, "[i]f the [stop request] has been issued in the absence of reasonable suspicion, then a stop in the objective reliance upon it violates the Fourth Amendment") (quoting *United States v. Hensley*, 469 U.S. 221, 231 (1985)); *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 568 (1971) (same in context of an arrest).[6]

---

detainer request. The detainer described another person with the name "Peter Brown"—a noncitizen who had been ordered removed. But when ICE received the U.S. citizen Mr. Brown's photograph from the county, it attached the U.S. citizen's photograph to the *noncitizen's* immigration file. *Id*. ¶ 54. Indeed, for years ICE has issued hundreds of detainers against U.S. citizens, reflecting systemic problems with ICE's data and practices. *See* ACLU of Florida, *Citizens on Hold: A Look at ICE's Flawed Detainer System in Miami-Dade County*, Mar. 20, 2019, https://bit.ly/2V250Vb; *see also* Syr. Univ., *ICE Detainers Placed on U.S. Citizens and Legal Permanent Residents*, Feb. 20, 2013, https://bit.ly/2IZ6Jcl.

[6] *Accord Wilson v. City of Bos.*, 421 F.3d 45, 55 (1st Cir. 2005); *Rogers v. Powell,* 120 F.3d 446 (3d Cir.1997).

Moreover, an officer conducting an arrest at the request of another cannot simply ignore obvious, readily available evidence that directly contradicts the purported probable cause. *See United States v. Pabon*, 871 F.3d 164, 175 (2d Cir. 2017) ("[O]fficers may not disregard facts tending to dissipate probable cause when directly confronted with such facts before an arrest is made.").[7] Nor may they "elect[] not to obtain easily discoverable facts that might tend to exculpate a suspect." *Cozzi v. City of Birmingham*, 892 F.3d 1288, 1297-98 (11th Cir. 2018) (quotation marks omitted). Plaintiff's allegations amply demonstrate that the City was informed in numerous ways that Plaintiff was a U.S. citizen—including his jail records, repeated and consistent statements, and the name discrepancy—dissipating whatever probable cause it could rely on from the federal government.

Plaintiff's allegations, moreover, establish the City's liability in multiple ways. First, Plaintiff alleges that the City's policy directed officers to arrest based on detainers even where they lacked probable cause. JA 24. That kind of policy facially violates the Fourth Amendment and is a well-recognized basis for *Monell* liability. *See, e.g.*, *Weber v. Dell*, 804 F.2d 796, 802-03 (2d Cir. 1986). Second, the City knew "to a moral certainty" that its officers would be asked to arrest

---

[7] *Accord Evett v. DETNTFF*, 330 F.3d 681, 688 (5th Cir. 2003); *United States v. Marin-Buitrago*, 734 F.2d 889 (2d Cir. 1984); *Sevigny v. Dicksey*, 846 F.2d 953, 957-58 & n.5 (4th Cir. 1988).

5

pursuant to ICE detainers, and yet it failed to provide any training or guidance on how to assess probable cause and address indications of U.S. citizenship. *Walker v. City of New York*, 974 F.2d 293, 297, 300 (1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)). Third, discovery is likely to reveal a pattern of similar violations by the City. In other detainer litigation, local jail records have revealed *hundreds* of U.S. citizens being jailed for ICE in a single locality. *See* ACLU of Florida, *Citizens on Hold: A Look at ICE's Flawed Detainer System in Miami-Dade County*, *supra* n.4 (discussing Miami-Dade County, Florida; Austin, Texas; and Rhode Island). Given the rampant errors in ICE's detainer practices, *see id.*, discovery in this case is likely to reveal the same.

### III. The Court Should Not Decide Broader Questions Which Have Been Inadequately Briefed.

The Court's third question raises complex questions on which courts have disagreed. *Compare El Cenizo*, 890 F.3d at 185-89, *with, e.g.*, *C.F.C. v. Miami-Dade*, 349 F. Supp. 3d 1236, 1259-61 (S.D. Fla. 2018); *Creedle*, 349 F. Supp. 3d at 1301-06; *Lopez-Aguilar v. Marion Cty.*, 296 F. Supp. 3d 959, 972-79 (S.D. Ind. 2017); *Roy v. Cty. of Los Angeles*, 2018 WL 914773, *23 (C.D. Cal. Feb. 7, 2018), *recon. denied*, 2018 WL 3439168, at *2 (July 11, 2018); *see also Melendres v. Arpaio*, 695 F.3d 990, 1000-01 (9th Cir. 2012); *Arizona v. United States*, 567 U.S. 387, 407 (2012). Amici urge the Court not to resolve these questions on (still) incomplete briefing, particularly as reversal is warranted on narrower grounds.

Dated: May 6, 2019

OMAR C. JADWAT
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2660
ojadwat@aclu.org

CHRISTOPHER DUNN
ANTONY GEMMELL
AMY BELSHER*
New York Civil Liberties Union Foundation
125 Broad Street, 19th Floor
New York, NY 10004
Tel: (212) 607-3300
cdunn@nyclu.org
agemmell@nyclu.org
abelsher@nyclu.org

Respectfully submitted,

/s/ Cody H. Wofsy
CODY H. WOFSY
SPENCER E. AMDUR
American Civil Liberties Union
39 Drumm Street
San Francisco, CA 94111
Tel: (415) 343-0785
Fax: (415) 395-0950
cwofsy@aclu.org
samdur@aclu.org

MARK FLEMING
National Immigrant Justice Center
224 S. Michigan Ave, Suite 200
Chicago, IL 60604
Tel: (312) 660-1628
mfleming@heartlandalliance.org

*Counsel for Amici Curiae*

*\* motion for admission forthcoming*

# CERTIFICATE OF COMPLIANCE

I certify that this document complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 29(a)(5) and Circuit Rule 29.1(c) and 32.1(a)(4) because it contains 1,548 words, exclusive of the portions of the brief that are exempted by Rule 32(f). I certify that this document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

<u>/s/ Cody H. Wofsy</u>
Cody H. Wofsy
May 6, 2019

**CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2019, I electronically filed the foregoing Brief of Amici Curiae with the Clerk for the United States Court of Appeals for the Second Circuit by using the CM/ECF system. A true and correct copy of this brief has been served via the Court's CM/ECF system on all counsel of record.

<u>/s/ Cody H. Wofsy</u>
Cody H. Wofsy
May 6, 2019